UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America, | |
| - V. - | S1 15 Cr 317 (KMW) |
| Dean Skelos and Adam Skelos, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
COUNTS FOUR AND SEVEN OF THE SUPERSEDING INDICTMENT**

G. Robert Gage, Jr.                                    Christopher P. Conniff
Joseph B. Evans                                         Alicia Giglio Suarez
Gage Spencer & Fleming LLP                              Jahmila D. Williams
410 Park Avenue, Suite 900                              Ropes and Gray LLP
New York, New York 10022                                1211 Avenue of the Americas
(212) 768-4900                                          New York, New York 10036
                                                        (212) 596-9000

*Attorneys for Senator Dean Skelos*                     *Attorneys for Adam Skelos*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

RELEVANT BACKGROUND ......................................................................................................1

ARGUMENT ..................................................................................................................................4

I.      APPLICABLE LAW ..........................................................................................................4

II.     THE SUPERSEDING INDICTMENT FAILS TO ACCURATELY AND
        ADEQUATELY ALLEGE THE ESSENTIAL ELEMENTS OF COUNTS FOUR
        AND SEVEN AND SHOULD BE DISMISSED ..............................................................6

        A.      The Actions Alleged In Paragraph 27g Can No Longer Constitute Official
               Acts Done In Connection With Counts Four And Seven .......................................6

        B.      The Government's Novel Prosecution Theory Should Be Rejected ......................7

        C.      The Other Acts Alleged In Counts Four and Seven Are Not Official Acts...........10

II.     EXTENDING THE EXTORTION AND BRIBERY LAWS TO COVER THE
        CONDUCT ALLEGED BY THE GOVERNMENT WOULD RENDER THE
        STATUTES VOID FOR VAGUENESS ........................................................................13

III.    REQUEST FOR *IN CAMERA* REVIEW OF THE GRAND JURY TRANSCRIPTS......14

CONCLUSION.............................................................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Almendarez-Torres v. United States*,
   523 U.S. 224 (1998).................................................................................................................5

*In re Biaggi*,
   478 F.2d 489 (2d Cir. 1973).....................................................................................................14

*Citizens United v. Fed. Election Commission*,
   558 U.S. 310 (2010).................................................................................................................11

*Evans v. United States*,
   504 U.S. 255 (1992).............................................................................................................7, 8

*In re Grand Jury Subpoena*,
   103 F.3d 234 (2d Cir. 1996).....................................................................................................14

*In re Petition of Craig*,
   131 F.3d 99 (2d Cir. 1997).......................................................................................................14

*Russell v. United States*,
   369 U.S. 749 (1962).............................................................................................................4, 5

*Skilling v. United States*,
   561 U.S. 358 (2010).............................................................................................................10, 14

*United States v. Biaggi*,
   853 F.2d 89 (1988)..............................................................................................................11, 12

*United States v. Carson*,
   464 F.2d 424 (2d Cir. 1972).....................................................................................................11

*United States v. Coia*,
   719 F.2d 1120 (11th Cir. 1983) ................................................................................................5

*United States v. Concepcion*,
   983 F.2d 369 (2d Cir. 1992)......................................................................................................7

*United States v. Ford*,
   435 F.3d 204 (2d. Cir 2006).....................................................................................................8

*United States v. Ganim*,
   510 F.3d 134 (2d Cir. 2007)..............................................................................................8, 11

*United States v. Garcia*,
    992 F.2d 409 (2d Cir. 1993) ........................................................................................................9

*United States v. Jefferson*,
    674 F.3d 332 (4th Cir. 2012) ................................................................................................11, 12

*United States v. Moten*,
    582 F.2d 654 (2d Cir. 1978) ......................................................................................................14

*United States v. Naegele*,
    474 F. Supp. 2d 9 (D.D.C. 2007) ..............................................................................................15

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000) ...........................................................................................4, 5, 7, 8

*United States v. Smith*,
    No. 12-cr-183 EAW, 2015 U.S. Dist. LEXIS 67203 (W.D.N.Y. May 20, 2015) ....................14

*United States v. Sun-Diamond Growers of Cal.*,
    526 U.S. 398 (1999) ................................................................................................8, 10, 11, 13

*United States v. Twersky*,
    No. 92-cr-1082 (SWK), 1994 U.S. Dist. LEXIS 8744 (S.D.N.Y. June 29, 1994) ............14, 15

*United States v. Walsh*,
    194 F.3d 37 (2d Cir. 1999) ..........................................................................................................7

*Valdes v. United States*,
    475 F.3d 1319 (D.C. Cir. 2007) ................................................................................................12

**STATUTES**

18 U.S.C. § 2 ..................................................................................................................................7

18 U.S.C. § 666 .........................................................................................................................8, 10

18 U.S.C. § 1951 ..........................................................................................................................10

**OTHER AUTHORITIES**

U.S. Const. amend. V ................................................................................................................5, 7

U.S. Const. amend. VI .............................................................................................................4, 5

Defendants Senator Dean Skelos and Adam Skelos respectfully submit this memorandum of law in support of their motion to dismiss Counts Four and Seven of the Superseding Indictment or, in the alternative, to have this Court review, *in camera*, the grand jury minutes related to these two Counts. While the standard for dismissal at this stage is high, the government's recent disclosure of substantial exculpatory material goes to the heart of these two Counts and therefore, requires dismissal as a matter of law.

Along with these exculpatory disclosures, the government appeared to unveil a new theory for prosecuting Counts Four and Seven – a theory that allows the prosecution of Senator Skelos for public corruption crimes based solely on his son's admittedly false or seriously exaggerated statements to his employer about what his father was doing on its behalf. Not surprisingly, this theory falls well outside the traditional limits for public corruption prosecutions and, therefore, should be rejected.

## RELEVANT BACKGROUND

On May 28, 2015, a grand jury returned a six-count Indictment against Senator Skelos and Adam Skelos. The charges underlying Counts Four and Six related to Senator Skelos's alleged relationship with an Arizona-based environmental technology company (the "Environmental Technology Company") that employed his son beginning in November 2012. The Indictment specifically alleged that in return for the continued employment of his son, Senator Skelos did the following:

> "facilitated the approval by Nassau County of a $12 million contract with the Environmental Technology Company (the 'Nassau County Contract')" (Indictment, ¶ 15(d));

> "pressured Nassau County officials (i) to obtain additional funding so that work on the Nassau County Contract could progress, and (ii) to make payments to the Environmental Technology Company so that the Company would continue making monthly payments to ADAM SKELOS" (*id.* ¶ 15(e));

1

> "assisted the Environmental Technology Company in its ultimately unsuccessful attempt to secure the issuance of hydraulic fracturing regulations by the New York State Department of Health sought by the Environmental Technology Company, including by directing members of his Senate staff to arrange a meeting between the Environmental Technology Company and the Department of Health" (*id.* ¶ 15(f)); and

> "attempted to secure changes to New York State's 2015-2016 budget to include additional funding for stormwater infrastructure projects and changes to New York State Law that would have authorized so-called 'design-build'[1] contracts, which would have benefitted the Environmental Technology Company and ADAM SKELOS," (*id.* ¶ 15(g)).

Any reasonable reading of the Indictment, as alleged, created the clear impression that Senator Skelos had somehow corruptly steered the Nassau County Contract to the Environmental Technology Company and that he then took specific legislative action to ensure that Nassau County could fund it. Neither proved to be true.

On June 22, 2015, the government provided a letter to the defense disclosing that a number of witnesses had contradicted key allegations in the Indictment ("Disclosure Letter"). (A copy of the Disclosure Letter is attached to the Gage Affidavit as Exhibit A). In particular, the government stated the following in connection with the allegation that Senator Skelos had taken legislative action related to the 2015/2016 budget favorable to the Environmental Technology Company:

> [T]he Government interviewed several individuals, including , who stated in sum and substance and in part that, to the

---

[1] Design-build authorization allows for the same private entity to perform the design and build portions of a municipal project. "A P3, or public-private partnership, goes beyond awarding a single contract to a private entity for designing and building [a public] project and typically involves the private entity making an investment in [a public] project in return for an ownership interest, managing ongoing project operations, and earning revenue from such operations." (Complaint, ¶ 42(c) n.10). This also requires separate approval.

2

> best of their recollection: (1) they are not aware of any steps taken by Dean Skelos to seek design-build/P3 authorization during the budget process or to extend the Governor's proposed P3 legislation to municipalities; (2) Dean Skelos did not spearhead any effort to create a clean water infrastructure fund or otherwise to allocate budget funds specifically for stormwater or water infrastructure in the budget;[] and (3) public officials other than Dean Skelos were requesting that budget funds be allocated to water infrastructure projects across the State. ▮ stated, in sum and substance and in part, that requests from several Senators regarding the inclusion of water and sewer infrastructure projects in the budget led to the request that ▮ include such a proposal in his Republican response to the Governor's State of the State. In addition, ▮ and ▮ stated in sum and substance and in part, that Dean Skelos stated in March 2015 that he was opposed to Nassau County's design-build proposal because Nassau County would not recognize sufficient financial benefits from the legislation."

(Disclosure Letter at 3). Not surprisingly, the government conceded it would no longer be arguing that Senator Skelos took the legislative initiatives previously suggested. *Id.*[2] The government also revealed for the first time that it intended to argue in connection with the counts relating to the Environmental Technology Company that Adam Skelos's exaggerations and/or misrepresentations about the support that his father was providing were sufficient to prosecute these crimes. (Disclosure Letter at 3 n.3).

On July 24, 2015, the grand jury returned a Superseding Indictment. Notwithstanding the June 22nd disclosures, the allegations contained in paragraph 15g remained unchanged, except that it now appears as paragraph 27(g). *See* (Superseding Indictment, ¶ 27(g)). Because those same allegations now fall under Counts Four and Seven of the

---

[2] The government also acknowledged that it "does not . . . intend to offer evidence . . . [of] 'bid rigging' or other illegality with respect to awarding the [Nassau County Contract] to [the Environmental Technology Company], and interviews conducted by the Government, . . . do not establish the existence of any unlawful conduct in the bidding process." (Disclosure Letter at 2).

Superseding Indictment, this memorandum seeks dismissal of Counts Four and Seven of the Superseding Indictment.[3]

## ARGUMENT

The government's recent exculpatory disclosures regarding Senator Skelos's inaction relating to the 2015/2016 legislative budget process destroy any suggestion that Senator Skelos took any corrupt official actions to benefit the Environmental Technology Company and therefore, render Counts Four and Seven deficient as a matter of law.  As such, these two counts should be dismissed.  At a minimum, we respectfully request that the Court conduct an *in camera* review of the grand jury minutes to ensure that the grand jury returning the Indictments in this case did not consider these false allegations and was instructed properly.[4]

**I.     APPLICABLE LAW**

An indictment's "primary office—[is] to inform the defendant of the nature of the accusation against him." *Russell v. United States*, 369 U.S. 749, 767 (1962).  In order to do so the indictment must "contain[] the elements of the offense intended to be charged" in a manner that "sufficiently apprises the defendant of what he must be prepared to meet" and "shows with accuracy to what extent [a defendant] may plead a former acquittal or conviction." *Id.* at 763-64 (citations omitted); U.S. Const. amend. VI; *see also United States v. Pirro*, 212 F.3d 86, 91-92 (2d Cir. 2000).

---

[3] Senator Skelos and Adam Skelos deny the allegations contained in the Superseding Indictment. However, with the exception of paragraph 27g of the Superseding Indictment and related claims (for reasons detailed in this memorandum), Senator Skelos and Adam Skelos accept, as they must, the remainder of the allegations in the Indictments as true for purposes of this motion.

[4] Defendants reserve their right to move to dismiss the remaining charges to the extent that information obtained through their motion for a bill of particulars leads to additional grounds for dismissal.

4

As the Second Circuit has held, an indictment that fails to include the essential elements of the offense to be charged must be dismissed because it violates a defendant's Sixth Amendment rights, as well as his Fifth Amendment right to be prosecuted upon an indictment returned by a grand jury. *Pirro*, 212 F.3d at 92-93, 95 (dismissing the indictment because the defendant "was not adequately informed of the nature of the accusation against him, as is his right under the Sixth Amendment" and because "the grand jury [therefore] may not have understood the elements of the crime and the evidence necessary to support the indictment, as is required by the Fifth Amendment."); *see also* U.S. Const. amends. V, VI; *Russell*, 369 U.S. at 769-70 (finding that such deficiencies can only be cured by a new indictment); *Cf. United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983) ("It is perfectly proper, and in fact mandated, that the district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense.").[5]

While the Supreme Court has made clear that an indictment must only "set forth each element of the crime that it charges," *see Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998), it and the Second Circuit have both acknowledged that this standard cannot always be met by merely tracking the language of the statute charged. *See Russell*, 369 U.S. at 765 ("An indictment not framed to apprise the defendant 'with reasonable certainty, of the nature of the accusation against him is defective, although it may follow the language of the statute.'" (citations omitted)); *Pirro*, 212 F.3d at 93 ("the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime."). The serious exculpatory

---

[5] "The timing of the defendant's objection is important to the level of scrutiny employed; a defendant who objects to the indictment before trial . . . is entitled to a more exacting review of the indictment. . . ." *Pirro*, 212 F.3d at 92.

disclosures by the government relating to allegations central to Counts Four and Seven take this case out of the heartland and require serious action.

## II. THE SUPERSEDING INDICTMENT FAILS TO ACCURATELY AND ADEQUATELY ALLEGE THE ESSENTIAL ELEMENTS OF COUNTS FOUR AND SEVEN AND SHOULD BE DISMISSED

### A. The Actions Alleged In Paragraph 27g Can No Longer Constitute Official Acts Done In Connection With Counts Four And Seven

Count Four of the Superseding Indictment is premised on the government's allegation that Senator Skelos took "official actions" on behalf of the Environmental Technology Company in exchange for the Company's continued employment of Adam Skelos (Superseding Indictment, ¶ 39) and Count Seven is based on a similar claim, *id.* ¶ 45.[6] The only legislative action alleged to have been taken by Senator Skelos on behalf of the Environmental Technology Company, however, related to certain aspects of New York State's 2015-2016 budget, which have now been determined to be incorrect. In particular, the Superseding Indictment alleged that he "attempted to secure changes to New York State's 2015-2016 budget to include additional funding for stormwater infrastructure projects and changes to New York State Law that would have authorized so-called 'design-build' contracts, which would have benefitted the Environmental Technology Company and ADAM SKELOS." (Superseding Indictment, ¶ 27(g)).

In this regard, we now know that multiple individuals with first-hand knowledge of these matters specifically informed the government that Senator Skelos did not: 1) take any steps "to seek design-build/P3 authorization during the budget process or to extend the Governor's P3 legislation to municipalities;" or 2) "spearhead any effort to create a clean water

---

[6] Count Seven alleges that Senator Skelos "solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with a business, transaction and series of transactions of [a] government and agency." *Id.*

6

infrastructure fund or otherwise to allocate budget funds specifically for stormwater or water infrastructure in the budget." (Disclosure Letter at 3). Remarkably, two witnesses told the government that Senator Skelos "was opposed to Nassau County's design-build proposal." *Id.*

In the absence of these allegations, the Superseding Indictment fails to state a prosecutable offense. The nature of the crimes underlying Counts Four and Seven against which defendants must defend, and in turn the evidence presented to the grand jury to return an indictment including such allegations are unclear at best. Thus, Counts Four and Seven should be dismissed. *See Pirro*, 212 F.3d at 92 ("The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." (quoting *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999))).

B.   **The Government's Novel Prosecution Theory Should Be Rejected**

The government's efforts to revive these Counts by suggesting that Adam Skelos's misstatements about what his father was doing (and his father's alleged "understanding" that they were being made) can constitute a corruption charge should be swiftly rejected because such misstatements, never adopted by Senator Skelos, cannot constitute an implicit or explicit agreement by Senator Skelos to perform official acts.[7]

---

[7] If the Superseding Indictment fails to state a claim against Senator Skelos then the charges against Adam Skelos must also be dismissed since he cannot be charged as a principal for allegedly committing extortion under color of official right because he is a private person. *See Evans v. United States*, 504 U.S. 255, 258-60 (1992) (referring to the actions of public officials under this statute and common law extortion). Thus, the government may only charge Adam Skelos under 18 U.S.C. § 2 for allegedly aiding and abetting Senator Skelos in his alleged commission of extortion under color of official right. In order to allege that Adam Skelos aided and abetted Senator Skelos, the government must first allege that Senator Skelos had the requisite criminal intent to commit extortion under color of official right and then adequately allege that Adam Skelos shared in that intent. *United States v. Concepcion*, 983 F.2d 369, 383 (2d Cir. 1992) ("an aider and abettor must share in the principal's essential criminal intent, [and] the principal must be shown to have had the essential criminal intent." (citations omitted)

7

It is well-established that while extortion under color of official right requires a *quid pro quo,* it can be implicit and is accomplished when "a *public official* has obtained a payment to which he was not entitled, knowing that the payment was made in return for *official acts.*" *United States v. Ganim*, 510 F.3d 134, 143 (2d Cir. 2007) (quoting *Evans*, 504 U.S. at 268) (emphasis added). Similarly, a *quid pro quo* is required to prove bribery under 18 U.S.C. § 666 – "a specific intent to give or receive something of value *in exchange for* an official act." *United States v. Ford*, 435 F.3d 204, 210 (2d. Cir 2006) (quoting *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999) (emphasis in original)). Even as to gratuities, where a specific *quid pro quo* is not required, the law still requires "a link between a thing of value conferred upon a *public official* and a specific *'official act'* for or because of which it was given." *Ganim*, 510 F.3d at 145-46 (quoting *Sun-Diamond*, 526 U.S. at 414) (emphasis added). Allegations that Adam Skelos – who is not a public official – was misrepresenting that "official acts" were occurring or would occur, a fact which defendants deny, is insufficient as a matter of law to demonstrate that Senator Skelos intended to violate the law.

Importantly, the Superseding Indictment contains no allegation that Senator Skelos ever suggested to anyone that he would take the actions referred to in paragraph 27g. The government attempts to bridge this gap by ambiguously suggesting that the Senator "understood" the misrepresentations that were being made. Without more, this ambiguous allegation cannot, and should not be permitted to, be the basis for a criminal prosecution. *See Pirro*, 212 F.3d at 92.

The case at hand is clearly distinguishable from other cases in this Circuit where a public official was found to have used his position to seek benefits on behalf of a family member since in those cases the public official always took a leading role in promoting the

---

(internal quotations omitted)). Because the Superseding Indictment does not allege the former as to the Environmental Technology Company, it certainly cannot allege the latter.

promised "official acts."  For example, in *United States v. Garcia*, then Congressman Robert Garcia initiated conversations with a third party at defense contractor Wedtech, relating to official conduct that could be provided by Congressman Garcia in return for the payment of benefits to his wife.  *See* 992 F.2d 409, 410-12 (2d Cir. 1993) "[Congressman] Garcia invited Mario Moreno, a Wedtech officer . . . , to dinner . . . , where Mrs. Garcia also was present." *Id.* at 410.  After listening to Moreno's interests and issues, including Wedtech's "interest in obtaining a contract to produce mail containers for the Postal Service," Congressman Garcia made direct representations to Moreno regarding his position and power noting "that he had already served for a few years in Congress and that he belong [sic] to the Banking Committee, the Postal Service Committee, . . . and that the more times you are elected to the Congress you become a more powerful person." *Id.* at 410-11.  While Mrs. Garcia then went on to have direct conversations with the third party making the payments without her husband present, she was following up on the arrangements made by her husband and then made promises to the third party that her husband later fulfilled.  *Id.* at 411 ("After the payments began, [Congressman] Garcia spoke with the Postmaster General about contracting with Wedtech to provide postal containers. . . .  In April 1985, the Postal Service contracted with Wedtech to build mail containers.").  Even there though, the Court noted that criminal liability could not be found if the acceptance of payments had only been "in connection with [Congressman Garcia's] official duties" or that it "reasonably could have 'affected' the performance of his official duties." *Id.* at 415.  Rather, Garcia had to have "understood that the payment was made in return for performance of those [official] duties." *Id.*

As such, the mere exaggerations or misrepresentations of Senator Skelos's son – assuming they occurred – cannot amount to an extortion or bribery under 18 U.S.C. §§ 1951 and 666.[8]

### C. The Other Acts Alleged In Counts Four and Seven Are Not Official Acts

While the Superseding Indictment does allege additional actions taken by Senator Skelos on behalf of the Environmental Technology Company, *see* (Superseding Indictment, ¶¶27(d)-(f)), none of them constitute official acts by Senator Skelos, especially when considered in the context of the unique father/son relationship present in this case.

As an initial matter, it is worth noting that the United States Supreme Court has cautioned in a different context that the term "official act" should be read narrowly. *Sun-Diamond*, 526 U.S. at 409 ("[A] narrow, rather than a sweeping, prohibition is more compatible with the fact that [the bribery and gratuity laws are] merely one strand of an intricate web of regulations, both administrative and criminal, governing the acceptance of gifts and other self-enriching actions by public officials."). Therefore, while some acts such as "receiving the sports teams at the White House, visiting the high school, and speaking to the farmers about USDA policy" are "'official acts' in some sense," they "are not 'official acts' within the meaning of the [bribery] statute," because they do not rise to the level of a requisite "decision or action." *Id.* at 407-08.

This Circuit has held that "[i]t is the corruption of official positions through misuse of influence in governmental decision-making which the bribery statutes make criminal."

---

[8] To the extent that Counts One and Two of the Superseding Indictment are premised on the extortions and bribery alleged in Counts Four and Seven, the relevant portions of those counts should be dismissed as well. In particular, the Supreme Court has made clear that an honest services fraud charge must be grounded in bribery or kickbacks, which are not present here. *Skilling v. United States*, 561 U.S. 358, 404 (2010) (honest services fraud is intended to cover "fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived.")

10

*United States v. Carson*, 464 F.2d 424, 434 (2d Cir. 1972). As such, not every action taken by a public official, even in his or her official capacity constitutes an "official action." *See United States v. Jefferson*, 674 F.3d 332, 356 (4th Cir. 2012) ("[T]he bribery statute does not encompass every action taken in one's official capacity, . . ."). Such action must do more than merely provide access. *Citizens United v. Fed. Election Commission*, 558 U.S. 310, 360 (2010) ("Ingratiation and access . . . are not corruption."); *see also Ganim*, 510 F.3d at 149-50 (distinguishing bribery from "legal lobbying").

While the Second Circuit in *Biaggi* noted that official acts can encompass settled or established practices of an official within his official capacity, such acts must still include "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in his official capacity." *United States v. Biaggi*, 853 F.2d 89, 96-97 (1988) (quoting 18 U.S.C. § 201(a)(3)); *see also Sun-Diamond*, 526 U.S. at 406. Thus, merely arranging meetings, consulting with constituents and other private citizens, and monitoring the status of a project, which do not involve a "decision or action," fall outside of the realm of "official acts." *See Sun-Diamond*, 526 U.S. at 407-08. It is these same types of allegations that exist here, and should likewise be rejected. For example, Senator Skelos's alleged efforts to set up meetings for the Environmental Technology Company, which he is not alleged to have been a part of – accepting as we must for purposes of this motion that these meetings actually occurred – cannot constitute official acts under the law. *See* (Complaint, ¶ 44(b)).

In addition, the limited acts alleged to have been taken by Senator Skelos in the Superseding Indictment and Complaint in connection with NIFA's review of the Nassau County Contract and payments by Nassau County to fulfill its obligations under the contract are

11

substantially less than acts that this Circuit has determined constitute "official acts" for purposes of the federal bribery laws.

In *Biaggi*, a company within Biaggi's constituency, Coastal, whose operations were in the Brooklynn Navy Yard which is owned by the City of New York, fell far behind on its rent causing it to lose contracts with the Navy. 853 F.2d at 92-93. The Court found Congressman Biaggi's intercessions with agencies and other officials on behalf of Coastal to constitute official acts where Biaggi: used office stationary to express his concerns to the Mayor and "urg[ed]" the Mayor to take certain official actions to better Coastal's rent situation; offered to go beyond just setting up meetings and providing access to other officials and instead to attend such meetings between the City and the Navy and to "assist in dealing with the Navy;" and planned to introduce a bill in Congress that could provide work for Coastal. *Id.* at 92-94, 97-98. *Cf. Jefferson*, 674 F.3d at 356 (in attempts to promote the third party's interest with regard to the development of Nigerian oil fields and to settle ongoing disputes, the public official: vouched for the company to secure contracts; scheduled and conducted meetings with Army officials to promote the company; met with representatives in foreign countries to endorse and promote the company's scheme; and attempted to promote ventures between foreign governments).

In *Biaggi* and *Jefferson*, there was clearly an opportunity and attempt by the public official to influence another to take action or make a decision to benefit the third party. *See*, *e.g.*, *Valdes v. United States*, 475 F.3d 1319, 1325 (D.C. Cir. 2007) ("All of those cases [including a congressman's use of his office to secure Navy contracts for a ship repair firm] are clearly [official acts] covered by the statute because they concern inappropriate influence on decisions that the government actually makes."). This is different than the situation at hand where, at worst, Senator Skelos allegedly inquired about the timing of settled issues.

With regard to the Nassau County Contract, the County and its related entities owed responses and funding to the Environmental Company. According to the Complaint, Senator Skelos allegedly sought only to obtain information about the timing of the NIFA review, and if anything to speed up the approval process (although defendants do not concede that even occurred). *See* (Complaint, ¶ 36(i)). However, there is no allegation that he attempted to influence NIFA's decision regarding approval on a contract that had already been approved by Nassau County.[9] And as to the contract related funding, there is no dispute that the funds were already owed to the Environmental Technology Company by Nassau County. Thus, as to both issues, there was no "decision or action on any question, matter, cause, suit, proceeding or controversy" pending in Senator Skelos's official capacity and therefore no "official act" taken. *See Sun-Diamond*, 526 U.S. 406-08. As such, the allegations in the Indictments relating to the Environmental Company are void of references to official acts, an essential element of the crimes charged.

## II. EXTENDING THE EXTORTION AND BRIBERY LAWS TO COVER THE CONDUCT ALLEGED BY THE GOVERNMENT WOULD RENDER THE STATUTES VOID FOR VAGUENESS

As set forth in more detail above, the government appears to have responded to its receipt of clearly exculpatory evidence in this case by shifting its theory of prosecution as to Counts Four and Seven from one within the traditional lines of public corruption law to a much more radical theory that overextends the definition of "official acts." Because such an

---

[9] The Complaint insinuates that Senator Skelos's Director of District Operations played some role in obtaining a quicker response regarding approval from NIFA through the Chief Deputy Executive of Nassau County. (Complaint, ¶¶ 36(j)-(k)). The connection is tenuous at best, but regardless, such outreach, even if it had occurred, still would not constitute an official act by Senator Skelos as a matter of law. Notably, and in contradiction to allegations in the Complaint, the government's Disclosure Letter points out that a witness stated "that NIFA has also provided pre-approval guidance that contracts were likely to be approved by NIFA in other cases." (Disclosure Letter at 2); *Cf.* (Complaint, ¶ 36(k)).

unprecedented expansion of the law provides no prior notice to Senator Skelos or Adam Skelos that their innocent conduct now constitutes a crime, and would result in arbitrary application, such an extension would render the law void for vagueness. *See Skilling*, 561 U.S. at 402-03. A penal statute is unconstitutionally vague if it fails to define the criminal offense: "(1) with sufficient definiteness that ordinary people can understand what conduct is prohibited[;] and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* (citation omitted).

### III.     REQUEST FOR *IN CAMERA* REVIEW OF THE GRAND JURY TRANSCRIPTS

"Disclosure of grand jury proceedings is permitted upon a showing that a 'ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.'" *United States v. Smith*, No. 12-cr-183 EAW, 2015 U.S. Dist. LEXIS 67203, at *7 (W.D.N.Y. May 20, 2015) (quoting Fed R. Crim P. 6(e)(3)(E)(ii)). Additionally, separate and apart from having grounds for dismissal, the Court has the power to order non-6(e) grand jury disclosures in the "sound discretion under the special circumstances of [each] case." *See In re Petition of Craig*, 131 F.3d 99, 103 (2d Cir. 1997) (citing *In re Biaggi*, 478 F.2d 489, 494 (2d Cir. 1973) (J., Friendly)).

When seeking disclosure of grand jury materials, "[t]he burden is on the party seeking disclosure to show a 'particularized need' that outweighs the need for secrecy" in grand jury deliberations. *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996) (quoting *United States v. Moten*, 582 F.2d 654, 662 (2d Cir.1978)). "[O]nce an investigation is over, most of the policies which warrant maintaining the secrecy of the grand jury proceeding, including, preventing the escape of those not yet indicted, are no longer present." *See United States v. Twersky*, No. 92-cr-1082 (SWK), 1994 U.S. Dist. LEXIS 8744, at *15 (S.D.N.Y. June 29, 1994) (citing *Moten*, 582 F.2d at 663 (noting "the growing realization that disclosure, rather than

14

suppression of relevant materials ordinarily promotes the proper administration of criminal justice.")); *United States v. Naegele*, 474 F. Supp. 2d 9, 12 (D.D.C. 2007) ("[O]nly a complete review of the entire Grand Jury proceeding can illuminate the extent of the government's reliance on the [defective evidence] to obtain all remaining counts of the Indictment."). Alternatively, the Court may review the grand jury transcripts *in camera* to determine the extent to which the transcript should be disclosed.  *See Twersky*, 1994 WL 319367, at *15 (ordering disclosure for *in camera* review).

The government's post-Indictment disclosure that one of the core allegations underlying Counts Four and Seven has proven untrue, as well as its suggestion that it may now be arguing a novel prosecution theory, necessitate the Court's *in camera* review of the minutes to ensure the validity of the Superseding Indictment.[10]  Additionally, to the extent the government now seeks to expand the reach of both statutes to cover unprecedented conduct, as well as the definition of an "official act," defendants are left to assume that the government likely failed to give proper instructions as to these Counts.  This is particularly concerning where the prosecutor's guidance on the law is the only guidance that the grand jury received.  *Twersky*, 1994 WL 319367, at *11 ("As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law 'to enable it intelligently to decide whether a crime has been committed.'" (citation omitted)).

---

[10]  On August 26, 2015, defense counsel asked the government whether the exculpatory information related to the design-build/P3 legislation was presented to the grand jury and we were told that the government was not going to disclose the substance of the grand jury presentation but that it had "complied with [its] legal obligations and DOJ policy with respect to the information presented to the Grand Jury."

## **CONCLUSION**

For the reasons set forth above, Senator Dean Skelos and Adam Skelos request that the Court dismiss Counts Four and Seven of the Superseding Indictment, or, in the alternative, conduct an *in camera* review of the grand jury minutes to ensure that the case the government is now prosecuting was the one presented to the grand jury.

Dated:      September 4, 2015
            New York, New York

                                    Respectfully submitted,


                        By:    /s/      G. Robert Gage, Jr.
                               G. Robert Gage, Jr.
                               Joseph B. Evans
                               Gage Spencer & Fleming LLP
                               410 Park Avenue, Suite 900
                               New York, New York 10022
                               (212) 768-4900

                               *Attorneys for Dean Skelos*


                        By:    /s/      Christopher P. Conniff
                               Christopher P. Conniff
                               Alicia Giglio Suarez
                               Jahmila D. Williams
                               Ropes and Gray LLP
                               1211 Avenue of the Americas
                               New York, New York 10036
                               (212) 596-9000

                               *Attorneys for Adam Skelos*