UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
                               :
UNITED STATES OF AMERICA        :
                               :
                               :
       - V. -                     :         S1 15. Cr. 317 (KMW)
                               :
                               :
DEAN SKELOS and                 :
ADAM SKELOS,                      :
                               :
               Defendants.  :
                               :
- - - - - - - - - - - - - - - - - - - - - X


# DEFENDANTS' MOTION IN LIMINE TO EXCLUDE CERTAIN IRRELEVANT AND PREJUDICIAL EVIDENCE AND TO INCLUDE RELEVANT PORTIONS OF CERTAIN RECORDED EVIDENCE SOUGHT TO BE ADMITTED BY THE GOVERNMENT


| | |
|---|---|
| G. Robert Gage, Jr. | Christopher P. Conniff |
| Joseph B. Evans | Alicia Giglio Suarez |
| Gage Spencer & Fleming LLP | Jon A. Daniels |
| 410 Park Avenue, Suite 900 | Ropes & Gray, LLP |
| New York, New York 10022 | 1211 Avenue of the Americas |
| (212) 768-4900 | New York, New York 10036 |
| | (212) 596-9000 |
| | |
| *Attorneys for Dean Skelos* | *Attorneys for Adam Skelos* |

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ................................................................................................................... 1

I. ADAM SKELOS'S PROVIDING OF A LEGAL REFERRAL TO SENATOR-A IS IRRELEVANT TO THIS CASE ................................................. 1

    Relevant Factual Background .................................................................... 1

    Applicable Law ........................................................................................... 3

    Argument .................................................................................................... 4

II. THE GOVERNMENT SHOULD NOT BE PERMITTED TO INTRODUCE STATEMENTS OF ADAM SKELOS THAT IT KNOWS ARE FALSE UNLESS THEY PROFFER THAT DEAN SKELOS WAS AWARE OF THEM ....................................................................................... 6

III. THE GOVERNMENT REDACTED RELEVANT AND CONTEXTUALLY REQUIRED PORTIONS OF TWO RECORDINGS ............ 7

    Relevant Facts ............................................................................................ 8

    Applicable Law ........................................................................................... 9

    Argument .................................................................................................. 10

CONCLUSION ..................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Beech Aircraft Corp. v. Rainey*,
  488 U.S. 153 (1988) .................................................................................................. 8

*United States v. Alvarado*,
  882 F.2d 645 (2d. Cir. 1989) ................................................................................... 10

*United States v. Benitez*,
  920 F.2d 1990 (2d. Cir. 1990) ................................................................................... 7

*United States v. Bruno*,
  661 F.3d 733 (2d Cir. 2011) ...................................................................................... 6

*United States v. Castro*,
  813 F.2d 571 (2d Cir.1987) ..................................................................... 8, 10, 11, 12

*United States v. Cummings*,
  60 F.Supp.3d 434, 438 (S.D.N.Y. 2014) ................................................................... 5

*United States v. Figueroa*,
  618 F.2d 934 (2d. Cir. 1980) ..................................................................................... 5

*United States v. Kaplan*,
  490 F.3d 110 (2d Cir. 2007) .................................................................................. 3, 4

*United States v. Lee*,
  723 F.3d 134 (2d. Cir. 2013) ..................................................................................... 4

*United States v. Quattrone*,
  441 F.3d 153 (2d. Cir. 2006) ..................................................................................... 4

*United States v. Ravich*,
  421 F.2d 1196 (2d Cir. 1970) .................................................................................... 4

*United States v. Williams*,
  577 F.2d 188 (2d. Cir. 1978) ..................................................................................... 5

**OTHER AUTHORITIES**

Fed. R. Evid. 106 ............................................................................................................. 9

Fed. R. Evid. 401 ............................................................................................................. 3

Fed. R. Evid. 401, 402 ..................................................................................................... 7

Fed. R. Evid. 403 ............................................................................................................................7

*New York Times* ...........................................................................................................................8

*The New York Times* ....................................................................................................................8

## **INTRODUCTION**

Defendants Senator Dean Skelos and Adam Skelos respectfully submit this memorandum of law in support of their request to: (1) preclude from trial two recordings that the government intends to offer regarding an unrelated legal referral made by Adam Skelos to a New York State Senator ("Senator-A"),[1] and any recordings containing misrepresentations by Adam Skelos about the legislative work being performed by Senator Dean Skelos on behalf of the Environmental Technology Company; and (2) require the government to provide additional context to two other recordings being offered at trial.[2]

### I.  ADAM SKELOS'S PROVIDING OF A LEGAL REFERRAL TO SENATOR-A IS IRRELEVANT TO THIS CASE

This motion is prompted by the government's attempt to introduce two recordings designed to blur the line between senate activity and a completely private matter with Senator-A, an attorney who also happens to serve as a senator, in order to improperly bolster its case. As set forth below, since these recordings relate solely to Senator-A acting as a lawyer and not to Senator-A acting in his capacity as a senator, they have no relevance except to draw the improper connections proposed by the government.

### **Relevant Factual Background**

On October 10, 2015, the government provided approximately 172 draft transcripts to the defense that it may introduce at trial. This package included two transcripts relating to calls involving Adam Skelos's attempts to obtain an attorney referral for the individual identified in the Indictment as CW-2, in connection with an alleged traffic violation.

---

[1] Following a conversation with the government, we removed the names of non-parties and the government's cooperating witness from the public filing and respectfully request that the Court maintain them under seal.

[2] The defendants are reviewing the draft transcripts provided recently by the government and reserve their right to make additional objections regarding these materials. The parties will confer in an effort to resolve any issues before raising them with the Court.

The first recording (Session 1607) is a call between Adam Skelos and Senator Skelos, during which Adam Skelos simply asked Senator Skelos to text him Senator-A's contact information. (Exhibit A, at 1). Adam Skelos informed Dean Skelos that he was going to reach out to Senator A about the matter, and that his father could let Senator-A know if he saw him. Senator Skelos responded by pointing out that "there's another guy that works for him. Is [REDACTED] still with Senator-A's firm? I think so. Yeah. . . . I think [REDACTED] is his last name, works there too." Dean Skelos added, "call Senator-A and tell him you have somebody that – but, you know, the guy's got to pay something." Adam Skelos acknowledged that the client would have to pay and then added, "I think he's just trying to avoid getting points on his license because it affects insurance." (Exhibit A, at 2).

The second call (Session 1649) took place on January 13, 2015, and involved Adam Skelos and Senator-A. (Exhibit B).[3] During this brief call, Adam Skelos stated, "I have a client and it might – it might be interesting to you. He ran into some trouble in his car talking on the cellphone and now I think he's going to get points on his license. So he asked if I knew anyone who's affiliated with a law firm that, that he could, he could, you know, hire them. And I said well let me call who's helped me with my own tickets." Senator-A responded, "Yeah. Yeah, let him – you know, do me a favor. Have him call . . . my partner [REDACTED]," and then provided Adam Skelos with the telephone number of the attorney. Adam Skelos then stated, "Now, this guy, he also – he happens to be a CEO of an engineering company based in Connecticut. They're starting to do some work here in New York, so it could – you never know it could lead to . . . other stuff."

---

[3] On January 12, 2105, CW-2 texted Adam Skelos and stated, "Hey man – any luck with the attorney thing? I only have 15 days (from last Friday) to plea so need to look for options. Appreciate if you have a rec." (Session 1605) (attached hereto as Exhibit E).

2

In conversations with the government prior to the filing of this motion, it proffered to the defense that it intends to introduce these two recordings as evidence that Adam Skelos, through his father, can put CW-2 in touch with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[4]  The government also intends to argue that these recordings are an example of using Senator Skelos's influence to assist the Environmental Technology Company, and that they demonstrate that Dean Skelos and Adam Skelos were working together to bring Senator Skelos's influence to bear with respect to people related to the Environmental Technology Company.  As set forth below, these recordings do not support the government's arguments and likely will create a prejudicial misimpression with the jury.  As such, the evidence should be excluded.

## Applicable Law

Relevant evidence is that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401.  "Implicit in that definition are two distinct requirements: (1) [t]he evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action."  *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007) (quoting *United States v. Diaz*, 878 F.2d 608, 614 (2d Cir.1989)).  It is well-settled that irrelevant evidence is not admissible at trial.  *See, e.g., United States v. Lee*, 723 F.3d 134, n. 7 (2d. Cir. 2013) (citing Fed. R. Evid. 402). Even if evidence is relevant, "the trial judge retains discretion to exclude the evidence 'if its probative value is substantially outweighed by a danger of unfair prejudice.'"  *Kaplan*, 490 F.3d at 121 (quoting Fed. R. Evid. 403).

---

[4] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Argument**

A simple reading of the two transcripts at issue makes clear that the communications have no bearing on the specific charges contained in the Indictment. Senator-A is an attorney whose law firm has helped Adam Skelos in the past with legitimate legal work, and Adam Skelos is now introducing Senator-A to another possible client.[5] There is no indication in either recording that Adam Skelos was using Dean Skelos's "influence" in order to obtain special access to Senator-A in his role as a senator. In fact, as the recordings make clear, Dean Skelos initially raised the name of a *different* lawyer who might be able to handle the matter and Adam Skelos was amenable to the idea. Exhibit B at 1:24-2:3. If the government's argument had any validity, such back and forth would never have occurred. Simply put, there is nothing connecting these recordings to the charges in this case.

The Second Circuit has explained that when evaluating the relevance of evidence, it "will often be useful to consider the chain of inferences arising from proffered evidence." *United States v. Quattrone*, 441 F.3d 153, 188 (2d. Cir. 2006). To be sure, "so long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *Id*. (citing *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir 1970)). But these two proposed wiretap recordings cannot even meet this minimal standard because the ultimate conclusion from the requisite chain of inferences still does not impact the mix of material information. Since these conversations have no probative value, they should be excluded as irrelevant.

Even if these recordings are in some way relevant – which they are not – their minimal probative value is outweighed by the risk of unfair prejudice. *United States v. Williams*, 577

---

[5] The government does not intend to argue that there was anything improper about this legal work.

4

F.2d 188, 191 (2d. Cir. 1978) ("[I]f the judge finds the evidence is relevant, he must also determine that the probative worth of, and the Government's need for, the evidence is not substantially outweighed by its prejudice to the defendant.").

"Evidence creates unfair prejudice if it may 'lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *United States v. Cummings*, 60 F.Supp.3d 434, 438 (S.D.N.Y. 2014) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). The Second Circuit has made clear that evidence is prejudicial "when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence. The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *United States v. Figueroa*, 618 F.2d 934, 943 (2d. Cir. 1980) (internal citations omitted).

Here, the risk of prejudice is particularly high if the government is permitted to make its proffered arguments about what these recordings demonstrate. While the defense can argue the irrelevance of this evidence to the jury, it should not be required to do so, particularly in this case where Senator -A's position alone could create the suggestion of some "high level access." The prejudice is compounded here because the government intends to introduce other recordings (e.g., Sessions 690 and 1066) where Dean Skelos and Adam Skelos talk about Senator-A's activities as a senator in a completely different context. As such, the misimpression that the government hopes to make with these personal calls could impact how the jury sees these other calls or vice versa.

In sum, defendants respectfully request that the government be precluded from introducing Sessions 1607 and 1649 at trial.

## II. THE GOVERNMENT SHOULD NOT BE PERMITTED TO INTRODUCE STATEMENTS OF ADAM SKELOS THAT IT KNOWS ARE FALSE UNLESS THEY PROFFER THAT DEAN SKELOS WAS AWARE OF THEM

In its June 22, 2015 disclosure letter, the government informed the defense that it "intends to offer evidence and argument that as part of the scheme [relating to Design Build and P3 Legislation], Adam Skelos – with the understanding of Dean Skelos – at times exaggerated and/or misrepresented support Dean Skelos was providing or would provide for [the Environmental Technology Company's agenda. . . ." (Disclosure Letter, at 3).[6] The government should not be permitted to introduce any such evidence since it is irrelevant and highly prejudicial unless the government can establish that Senator Skelos, the public official capable of taking, or agreeing to take, official action, was aware of them. Since the government has not proffered such evidence, the government should be precluded from offering such statements at trial.

As the Court pointed out in its opinion denying defendants' motion to dismiss, "extortion or bribery occurs when an unlawful payment is made in exchange for 'official action.'" (10/20/15 Opinion, at 4 – Document 47). The Court further determined that "both the Hobbs Act and § 666 apply even where an official action is not ever carried out." (10/20/15 Opinion, at 7). While the Court's decision forecloses the issue of whether an official act is required to be proven in order to establish guilt, evidence relating to "official acts" is still relevant since it goes to the issue of a defendants' intent to enter into the alleged unlawful agreement. *See United States v. Bruno*, 661 F.3d 733, 744 (2d Cir. 2011) (a jury could infer that the public official fulfilled the bribery *quid pro quo* "from evidence of benefits received and subsequent favorable treatment" through official actions taken).

---

[6] A redacted copy of the June 22, 2015 Disclosure letter was attached to the defendants' motion to dismiss and an unredacted copy was provided to the Court at that time.

If admitted, the recordings prejudice both defendants and therefore should be excluded because they will leave the jury with the misimpression that Senator Skelos took certain legislative actions on behalf of the Environmental Technology Company that the government appears to concede that did not happen. (*See* Disclosure Letter, at 3). The jury could rely on this erroneous suggestion of legislative action as evidence of Senator Skelos's intent to enter into an unlawful *quid pro quo*.

Without a proffer by the government establishing that Dean Skelos knew about these misstatements, they do not have "any tendency to make the existence of a fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401, 402. In fact, they would only serve to confuse the jury.

For these reasons, any statements by Adam Skelos regarding actions by his father known to be false by the government should not be admitted into evidence unless the government proffers that Dean Skelos was aware of the communications and adopted them as his own.

## III. THE GOVERNMENT REDACTED RELEVANT AND CONTEXTUALLY REQUIRED PORTIONS OF TWO RECORDINGS

Defendants object to the government's proposed exclusion of sections of two wiretap recordings because the redacted portions provide important context to the conversations sought to be admitted by the government.[7] This type of selective excerpting that "distorts [the] meaning," of defendants' statements is precisely the type of concern that the rule of completeness set forth in the Federal Rules of Evidence was designed to guard against. *See United States v. Benitez,* 920 F.2d 1080, 1087 (2d. Cir. 1990); *See, e.g.*, *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988). The government therefore should be precluded from offering the wiretap recordings in their proposed redacted form and instead be required to add the limited

---

[7] The government's proposed draft transcripts for these calls are attached hereto as Exhibits C and D. For the Court's convenience, we have included in red the additions proposed by the defense.

7

additions requested by the defendants so that the evidence is in a manner that includes the additional context "necessary to explain the admitted portion."  *United States v. Castro*, 813 F.2d 571, 575–76 (2d Cir.1987), *cert. denied*, 484 U.S. 844 (1987) (citations omitted).

### Relevant Facts

Both calls at issue in this motion relate to communications between Adam Skelos and CW-2 during February 2015. During the first recording (Session 2534), which occurred on February 11, 2015, Adam Skelos and CW-2 discuss the possibility that the *New York Times* may be publishing an article about an investigation of Dean Skelos and Adam Skelos. (Exhibit C).  In the portion of the call included by the government, Adam Skelos conveyed his concerns about the possible article, stating, "Like I'm nervous about -- okay, so there's some reporter that -- from the *New York Times* that might be putting together a story regarding like real estate."  Exhibit C at 1:13-16.  He then explained that the article may have been related in part to issues regarding a meeting Adam Skelos and CW-2 had with a New York State Senator. *Id*. at 1:23 – 2:16.  The government cuts off the conversation after Adam Skelos noted that another senior executive at the Environmental Technology Company had said that *The New York Times* had been on [the Company's] Web site like 12 times that day -- or that week.  He thought -- and maybe because of, you know, them wanting to do a story about water purification, I just have a feeling it might be this reporter snooping around, trying to build a story."  *Id*. at 2:24-3:3. In the very next sentence (now omitted), Adam Skelos continued discussing his role with the Environmental Technology Company, by stating, "we have done nothing wrong.  Everything has been RFP'ed and done by the book."

The second recording (Session 2811), which occurred on February 23, 2015, was in connection with CW-2's upcoming meeting with a different New York State senator.  Towards the end of the government's proposed excerpt, Adam Skelos advised CW-2 that he had to

8

"distance himself from being in official like meetings." (Exhibit D at 6:20-21). He then added, "it's just better to, you know, to keep like you being like the layer of protection between like me and them." (*Id*. at 7:2-3). Adam later noted that "with everything that's been going on, it just -- I've been trying to be more cautious than average just because, you know, you never want a problem." (*Id*. at 8-11). The government cuts off the conversation after Adam Skelos stated that "you never want someone to be able to say, oh, he was -- you know, he met with staff on the data then to, you know, it just -- it would become a problem and it really doesn't need to be." (*Id*. at 13-16). The government's proposed transcript omits the completion of Adam Skelos's statements on this subject; namely that "everything we are doing now we could legitimately say is above board, and let's – you know, we'll just keep it that way. And we can get this done by doing it that way, too."

As set forth below, both of these two short, but crucial, additions are necessary to allow the jury to fairly understand these two communications and, therefore, should be included in the government's offering of the recordings.

**Applicable Law**

The "rule of completeness" set forth in the Federal Rules of Evidence provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." Fed. R. Evid. 106. As the Second Circuit has explained, the rule of completeness is violated "only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant." *Benitez,* 920 F.2d at 1086-87 (quoting *United States v. Alvarado*, 882 F.2d 645, 651 (2d. Cir. 1989)). Even though a statement may be hearsay, an "omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted

9

portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Castro*, 813 F.2d 571, 575–76 (2d Cir.1987), *cert. denied*, 484 U.S. 844 (1987) (citations omitted).

When faced with evidence presented in redacted form, the most important consideration is to ensure that the information is being offered in a fair and accurate manner that does not improperly manipulate the meaning of the underlying statements.  As part of this evaluation, it is necessary to take into account the complete circumstances of the conversation being offered: "courts historically have required a party offering testimony as to an utterance to present fairly the 'substance or effect' and context of the statement."  *United States v. Castro*, 813 F.2d 571, 576 (2d. Cir. 1987).  Put simply, the testimony "should at least represent the tenor of the utterance as a whole, and not mere fragments of it."  *Id*. at 576 (quoting 7 Wigmore on Evidence § 2099, at 618 (Chadbourn rev. ed. 1978)).  In setting forth the proper approach for an analysis under the rule of completeness, the Second Circuit has emphasized that it is important to "remain guided by the overarching principle that it is the trial court's responsibility to exercise common sense and a sense of fairness to protect the rights of the parties while remaining ever mindful of the court's obligation to protect the interest of society in the 'ascertainment of the truth.'"  *Castro*, 813 F.2d 571 at 576 (citing Fed.R.Evid. 611(a)).

## Argument

The proposed redactions, without the small additions proposed by the defense, clearly do not "present fairly the substance or effect and context" of the communications being offered, as required by the rule of completeness.  *Castro*, 813 F.2d at 576.  To the contrary, the carefully-selected excerpts proposed by the government convey a misleading impression of the statements being made by Adam Skelos and CW-2, and omit the fact that the concerns raised in each call had nothing to do with fear of having any criminal conduct revealed.  Only by including the

requested additional statements is it possible to "ensure fair and impartial understanding of the admitted portion" and place the redacted portions in proper context. *Id*. at 576.

The portion of the February 11th recording sought by the government reflects Adam Skelos's concern that he or his father might be the subject of an unfavorable newspaper article. In present form (without the additions), the government will be free to argue, and the jury might incorrectly conclude, that Adam Skelos was concerned about the article because he had something to hide. This misperception would be quickly corrected by including Adam Skelos's very next statement to CW-2. As Adam explained at the time without any knowledge that his communication was being secretly recorded, "we have done nothing wrong. Everything has been RFP'ed and done by the book." These additional two lines therefore are necessary to "place the admitted portion in context." *Castro*, 813 F.2d at 576.

The proposed excerpt from the February 23rd communication is similarly misleading without the defendants' proposed addition. In this conversation, Adam Skelos and CW-2 discuss upcoming meetings scheduled between CW-2 and certain New York State senators. The government highlights a portion of the recording during which Adam Skelos talked about wanting to "distance himself" from the meetings and "not become a problem" in light of "everything that's been going on," referring to the media attention being devoted the government's investigation of Senator Skelos. The sentence added by the defendants -- that "everything we are doing now we could legitimately say is above board, and let's – you know, we'll just keep it that way. And we can get this done by doing it that way, too" provides important context and an accurate description of the highlighted exchange. As such, it should be included in the proposed transcript.

While it is understandable why the government would like to keep these portions of the

11

recordings from the jury, the Court should "remain guided by the overarching principle that it is the trial court's responsibility to exercise common sense and a sense of fairness," *Castro*, 813 F.2d at 576, and ensure that the clarifying statements made by the defendants are included.

**CONCLUSION**

For the reasons set forth above, we respectfully request that the Court rule that the government: (i) shall not introduce the recordings identified as Sessions 1607 and 1649 or otherwise introduce evidence relating to this issue; (ii) shall not admit any misstatements by Adam Skelos relating to Senator Skelos' legislative support for the Environmental Technology Company agenda, without a proffer by the government that Senator Skelos was aware of such statements; and (ii) include the requested additions to Sessions 2534 and 2811 in the final recordings introduced into evidence.

Dated:  October 23, 2015

                                                                          Respectfully submitted,

By:    s/ G. Robert Gage, Jr.
           G. Robert Gage, Jr.
           Joseph B. Evans
           Gage Spencer & Fleming LLP
           410 Park Avenue, Suite 900
           New York, New York 10022
           (212) 768-4900

           *Attorneys for Dean Skelos*

By:    s/ Christopher P. Conniff
           Christopher P. Conniff
           Alicia Giglio Suarez
           Jon A. Daniels
           Ropes and Gray LLP
           1211 Avenue of the Americas
           New York, New York 10036
           (212) 596-9000

           *Attorneys for Adam Skelos*

`