UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

DEAN SKELOS and ADAM SKELOS,

Defendants.

S1 15 Cr. 317 (KMW)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE INDICTMENT
FOR ERRORS IN THE GRAND JURY INSTRUCTIONS
AND FAILURE TO STATE AN OFFENSE**

Alexandra A.E. Shapiro
Eric S. Olney
Fabien Thayamballi
Shapiro Arato LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
(212) 257-4880

G. Robert Gage, Jr.
Gage Spencer & Fleming LLP
410 Park Avenue, Suite 900
New York, New York 10022
(212) 768-4900

*Attorneys for Dean Skelos*

John J. Kenney
Hoguet Newman Regal & Kenney, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808

*Attorneys for Adam Skelos*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 2

I.   THE COURT SHOULD DISMISS THE INDICTMENT BECAUSE THE GRAND JURY WAS IMPROPERLY INSTRUCTED ON OFFICIAL ACTION OR, AT A MINIMUM, RELEASE OR INSPECT THE INSTRUCTIONS ......................................... 2

    A.   The Court Should Dismiss The Indictment Because The Grand Jury Was Improperly Instructed On The Scope Of Official Action ................................................... 2

    B.   Alternatively, The Court Should Direct The Government To Provide The Grand Jury Instructions To The Defense Or Inspect The Instructions Itself ........................... 11

II.  THE BRIBERY CHARGES SHOULD BE DISMISSED BECAUSE THE GRAND JURY DID NOT FIND THAT SKELOS AGREED TO ACT ON SPECIFIC MATTERS ..................................................................................................... 14

    A.   *McDonnell* Does Not Permit Prosecution Unless The Public Official Agrees To Act On A Focused, Concrete, And Specifically Identified Matter ...................................... 15

    B.   The Court Should Dismiss The Glenwood and PRI Bribery Counts For Failure To Allege That Dean Skelos Agreed To Act On A Specific Matter .................................. 18

    C.   The Court Should Dismiss All Of The Bribery Counts Because The Grand Jury Was Improperly Instructed On This Element ................................................................. 20

III. THE GRATUITY CHARGES SHOULD BE DISMISSED ................................................ 21

    A.   Section 666 Does Not Criminalize Gratuities ................................................................. 21

    B.   The Indictment Does Not Adequately Allege That Any Of The Payments Were Illegal Gratuities ............................................................................................................. 23

IV.  IF THE GOVERNMENT ARGUES THAT *MCDONNELL* DOES NOT APPLY TO SECTION 666, THE SECTION 666 CHARGES ARE UNCONSTITUTIONAL ............. 24

    A.   Without The "Official Act" Requirement, Section 666 Would Violate The First Amendment ...................................................................................................................... 25

i

B.    Without The "Official Act" Requirement, Section 666 Would Be Unconstitutionally Vague ............................................................................................................... 27

C.    Without The "Official Act" Requirement, Section 666 Would Violate The Tenth Amendment And Constitutional Principles Of Federalism ........................................... 28

V.   THE HONEST-SERVICES FRAUD STATUTE IS UNCONSTITUTIONALLY VAGUE .................................................................................................................. 29

VI.  THE HOBBS ACT DOES NOT COVER THE CHARGED CONDUCT ......................... 31

CONCLUSION ................................................................................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Nova Scotia v. United States*,
    487 U.S. 250 (1988) ................................................................................................ 5, 7, 20

*Bond v. United States*,
    134 S. Ct. 2077 (2014) ................................................................................................. 28

*Branzburg v. Hayes*,
    408 U.S. 665 (1972) ...................................................................................................... 2, 3

*Citizens United v. Fed. Election Comm'n*,
    558 U.S. 310 (2010) ................................................................................................ 18, 26

*City of Houston, Tex. v. Hill*,
    482 U.S. 451 (1987) ...................................................................................................... 26

*Cline v. Frink Dairy Co.*,
    274 U.S. 445 (1927) ...................................................................................................... 30

*Connally v. Gen. Const. Co.*,
    269 U.S. 385 (1926) ...................................................................................................... 30

*Crandon v. United States*,
    494 U.S. 152 (1990) ...................................................................................................... 30

*Dickerson v. Napolitano*,
    604 F.3d 732 (2d Cir. 2010) .................................................................................... 26, 27

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,
    441 U.S. 211 (1979) ...................................................................................................... 11

*Evans v. United States*,
    504 U.S. 255 (1992) ................................................................................................ 16, 31

*Johnson v. United States*,
    135 S. Ct. 2551 (2015) ................................................................................................. 30

*Kelly v. Robinson*,
    479 U.S. 36 (1986) ........................................................................................................ 28

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ...................................................................................................... 27

*McCormick v. United States,*
    500 U.S. 257 (1991) ................................................................................. 18, 26

*McDonnell v. United States,*
    136 S. Ct. 2355 (2016) ................................................................................ passim

*NAACP v. Button,*
    371 U.S. 415  (1963) .......................................................................................... 26

*New York v. Ferber,*
    458 U.S. 747 (1982) ........................................................................................... 26

*Ocasio v. United States,*
    136 S. Ct. 1423 (2016) ...................................................................................... 32

*Regan v. Taxation Without Representation of Wash.,*
    461 U.S. 540 (1983) ........................................................................................... 26

*Skilling v. United States,*
    561 U.S. 358 (2010) .................................................................................... passim

*United States v. Aleynikov,*
    676 F.3d 71 (2d Cir. 2012) ............................................................................... 19

*United States v. Alter,*
    482 F.2d 1016 (9th Cir. 1973) .......................................................................... 13

*United States v. Belton,*
    No. 14-CR-00030-JST, 2015 WL 1815273 (N.D. Cal. Apr. 21, 2015) .................... 12

*United States v. Bowling,*
    108 F. Supp. 3d 343 (E.D.N.C. 2015) .................................................................. 5

*United States v. Boyland,*
    862 F.3d 279 (2d Cir. 2017) ....................................................................... 15, 24

*United States v. Braniff Airways, Inc.,*
    428 F. Supp. 579 (W.D. Tex. 1977) ..................................................................... 5

*United States v. Bravo-Fernandez,*
    239 F. Supp. 3d 411 (D.P.R. 2017) .................................................................... 13

*United States v. Breslin,*
    916 F. Supp. 438 (E.D. Pa. 1996) ........................................................................ 5

*United States v. Brito,*
    907 F.2d 392 (2d Cir. 1990) ............................................................................ 3, 4

*United States v. Cabrera-Teran,*
  168 F.3d 141 (5th Cir. 1999) ................................................................... 3

*United States v. Calandra,*
  414 U.S. 338 (1974) ................................................................................. 2

*United States v. Ceneus,*
  No. 10-CR-27-SPM/GRJ, 2011 WL 5547107 (N.D. Fla. 2011) ............... 14

*United States v. Cerullo,*
  No. 05-cr-1190, 2007 WL 2462111 (S.D. Cal. Aug. 28, 2007) .................. 5

*United States v. Crozier,*
  987 F.2d 893 (2d Cir. 1993) .................................................................... 23

*United States v. D'Alessio,*
  822 F. Supp. 1134 (D.N.J. 1993) ..................................................... 5, 8, 20

*United States v. Dionisio,*
  410 U.S. 1 (1973) ..................................................................................... 3

*United States v. Facteau,*
  No. 15-cr-10076-ADB, 2016 WL 4445741 (D. Mass. 2016) .................... 12

*United States v. FedEx Corp.,*
  No. C14-380 CRB, 2016 U.S. Dist. LEXIS 6155 (N.D. Cal. Jan. 19, 2016) ..................... 13, 14

*United States v. Fernandez,*
  722 F.3d 1 (1st Cir. 2013) .................................................................. 22, 23

*United States v. Fleurissaint,*
  No. 03-cr-906 (RPP), 2004 WL 2101922 (S.D.N.Y. Sept. 21, 2004) ........ 4

*United States v. Fuentes,*
  No. CR.S-07-0248 WBS, 2008 WL 2557949 (E.D. Cal. June 24, 2008) .......... 13

*United States v. Ganim,*
  510 F.3d 134 (2d Cir. 2007) ............................................................ passim

*United States v. Ho,*
  No. CRIM. 08-00337 JMS, 2009 WL 2591345 (D. Haw. Aug. 20, 2009) .......... 14

*United States v. Hoey,*
  No. S3 11-CR-337 PKC, 2014 WL 2998523 (S.D.N.Y. July 2, 2014) .......... 4, 14

*United States v. Hogan,*
  712 F.2d 757 (2d Cir. 1983) ............................................................ 3, 4, 7

*United States v. Jackowe*,
   651 F. Supp. 1035 (S.D.N.Y. 1987) ...................................................................... 23

*United States v. Jennings*,
   160 F.3d 1006 (4th Cir. 1998) ............................................................................ 22

*United States v. L. Cohen Grocery Co.*,
   255 U.S. 81 (1921) ............................................................................................ 30

*United States v. Leeper*,
   No. 06-CR-58A, 2006 WL 1455485 (W.D.N.Y. May 22, 2006).............................. 3

*United States v. Lopez-Lopez*,
   282 F.3d 1 (1st Cir. 2002) ................................................................................... 4

*United States v. Martinez*,
   800 F.3d 1293 (11th Cir. 2015) ........................................................................... 3

*United States v. Monzon-Luna*,
   No. 11-cr-722 (RRM), 2014 WL 223100 (E.D.N.Y. Jan. 21, 2014)......................... 4

*United States v. Morales*,
   No. CR. S-05-0443 WBS, 2007 WL 628678 (E.D. Cal. Feb. 28, 2007)................. 12

*United States v. Peralta*,
   763 F. Supp. 14 (S.D.N.Y. 1991) .................................................................. 5, 14

*United States v. Pirro*,
   212 F.3d 86 (2d Cir. 2000) ........................................................................... 3, 19

*United States v. R.L.C.*,
   503 U.S. 291 (1992) ......................................................................................... 30

*United States v. Roberts*,
   481 F. Supp. 1385 (C.D. Cal. 1980) ..................................................................... 5

*United States v. Rosen*,
   716 F.3d 691 (2d Cir. 2013) ........................................................................... 6, 17

*United States v. Sells Eng'g, Inc.*,
   463 U.S. 418 (1983) ....................................................................................... 3, 4

*United States v. Silver*,
   864 F.3d 102 (2d Cir. 2017) ........................................................... 7, 15, 17, 31

*United States v. Skelos*,
   707 F. App'x 733 (2d Cir. 2017) ................................................................. passim

*United States v. Stevens*,
   771 F. Supp. 2d 556 (D. Md. 2011) ................................................................... 5, 14

*United States v. Strother*,
   129 F.3d 114 (2d Cir. 1997) ................................................................................ 3

*United States v. Sun-Diamond Growers of Cal.*,
   526 U.S. 398 (1999) ................................................................................... passim

*United States v. Talao*,
   No. CR-97-0217-VRW, 1998 WL 1114043 (N.D. Cal. Aug. 14, 1998).......................... 12, 13

*United States v. Tavares*,
   844 F.3d 46 (1st Cir. 2016) ................................................................................ 24, 28

*United States v. Twersky*,
   No. S2 92 Cr. 1082 (SWK), 1994 WL 319367 (S.D.N.Y. June 29, 1994) ........................ 4, 14

*United States v. Ulbricht*,
   858 F.3d 71 (2d Cir. 2017 ................................................................................ 11, 12

*United States v. Vetere*,
   663 F. Supp. 381 (S.D.N.Y. 1987) ..................................................................... 5

*United States v. Way*,
   No. 1:14-CR-00101-DAD-BAM, 2015 WL 8780540 (E.D. Cal. Dec. 15, 2015)................... 12

*United States v. Welch*,
   248 F. Supp. 2d 1061 (D. Utah 2001) ................................................................. 8

*United States v. Williams*,
   553 U.S. 285 (2008) ................................................................................... 25

*Vasquez v. Hillery*,
   474 U.S. 254 (1986) ................................................................................... 8

*Virginia v. Hicks*,
   539 U.S. 113 (2003) ................................................................................... 25

*Wood v. Georgia*,
   370 U.S. 375 (1962) ................................................................................... 4

*Yates v. United States*,
   135 S. Ct. 1074 (2015) ................................................................................. 23

**Statutes and Rules**

18 U.S.C. § 201 ................................................................................................ passim

18 U.S.C. § 666 ................................................................................................ passim

18 U.S.C. § 1343 .............................................................................................. 29, 30

18 U.S.C. § 1346 ............................................................................................ 4, 29, 30

18 U.S.C. § 1951 ..................................................................................................... 31

Comprehensive Crime Control Act of 1984,
    Pub. L. No. 98-473, 98 Stat. 1837 (1984) ............................................................. 23

Fed. R. Crim. P. 6(e) ......................................................................................... 11, 12

N.Y. Penal Law § 200.00 et seq.................................................................................. 28

## INTRODUCTION

This case was indicted and tried during a period when the government's ability to use vague, broadly-worded federal statutes to imprison people for a vast swath of conduct, including much ordinary back and forth among politicians and their constituents, was virtually unchecked. However, since then the legal landscape has shifted.  The Supreme Court's decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016), brought about a sea change in federal public corruption law, and sharply curtailed the government's ability to wield the corruption laws as a "meat axe" rather than a "scalpel."  *Id.* at 2373.  Yet the Indictment in this case was returned under the prior regime, and is therefore infirm, in whole or in part, in two principal ways.  First, it is highly likely that the grand jury was improperly instructed, and misinformed that it could return a true bill based on acts that are not actually crimes, such as a *quid pro quo* exchange for access to a meeting.  At the very least, it is clear that the grand jury was never told that this type of conduct is insufficient to prove any of the charged offenses, and that the grand jury could well have indicted based on that misunderstanding of the law.  Second, aspects of the Indictment plainly do not state an offense after *McDonnell*.  For these reasons as well as additional arguments set forth below, the Indictment, or at the very least certain portions of it, should be dismissed.  Alternatively, the Court should order the government to disclose the minutes of its legal instructions to the grand jury to the defense, or to the Court, for inspection and further proceedings to evaluate the validity of the Indictment under *McDonnell*.

<u>**ARGUMENT**</u>

**I.     THE COURT SHOULD DISMISS THE INDICTMENT BECAUSE THE GRAND JURY WAS IMPROPERLY INSTRUCTED ON OFFICIAL ACTION OR, AT A MINIMUM, RELEASE OR INSPECT THE INSTRUCTIONS**

> **A.     The Court Should Dismiss The Indictment Because The Grand Jury Was Improperly Instructed On The Scope Of Official Action**

In *McDonnell*, the Supreme Court sharply limited the scope of federal corruption prosecutions in order to avoid serious constitutional infirmities and ensure that the line between lawful and unlawful conduct is clear.  The Supreme Court rejected an expansive view of "official action" in favor of a narrow definition ensuring that the alleged *quid pro quo* is tied to the formal exercise of power to decide a specific official matter.

The Second Circuit held that the jury instructions in the first trial on "official action" were overbroad under *McDonnell* and created a risk that the Skeloses were convicted for conduct that is not criminal.  Similar *McDonnell* error undoubtedly also tainted the grand jury proceedings, given the state of the law at the time the Indictment was returned, and the government's previous extremely broad interpretation of "official action," requiring dismissal.

> **1.     The Indictment should be dismissed if the grand jury received erroneous legal instructions and the Skeloses were prejudiced**

The grand jury is an institution "deeply rooted in Anglo-American history," which "served for centuries" in England as "a protector of citizens against arbitrary and oppressive governmental action."  *United States v. Calandra*, 414 U.S. 338, 342-43 (1974).  "In this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by 'a presentment or indictment of a Grand Jury.'"  *Id.* at 343.  The grand jury's responsibilities include "the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions."  *Id.*; *accord Branzburg v. Hayes*,

408 U.S. 665, 686-88 (1972).  In other words, the grand jury's "task is to inquire into the [e]xistence of possible criminal conduct and to return only well-founded indictments." *Branzburg*, 408 U.S. at 688; *see also United States v. Dionisio*, 410 U.S. 1, 16-17 & n.15 (1973) (the grand jury's "mission is to clear the innocent, no less than to bring to trial those who may be guilty").

To prevent unfounded prosecutions, "the Fifth Amendment require[s] that the grand jury find probable cause for each of the elements of a violation of [federal law]."  *United States v. Martinez*, 800 F.3d 1293, 1295 (11th Cir. 2015) (per curiam); *accord United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000); *United States v. Cabrera-Teran*, 168 F.3d 141, 143, 145-46 (5th Cir. 1999), *overruled on other grounds by United States v. Longoria*, 298 F.3d 367, 372 n.6 (5th Cir. 2002).  Even a facially valid indictment may be deficient if the grand jury was prevented from performing its constitutionally mandated screening function.  *See, e.g.*, *United States v. Strother*, 129 F.3d 114, at *3 (2d Cir. 1997) (unpublished) (court should "dismiss the indictment if the grand jury was misled" or "misinformed"); *United States v. Brito*, 907 F.2d 392, 394, 396 (2d Cir. 1990) (same); *United States v. Hogan*, 712 F.2d 757, 759-62 (2d Cir. 1983) (dismissing indictment for "prosecutorial misconduct" and "inadvertent . . . misstatements" that "probably misled" grand jury); *United States v. Leeper*, No. 06-CR-58A, 2006 WL 1455485, at *1-5 (W.D.N.Y. May 22, 2006) (dismissing indictment because prosecutors' statements to grand jury violated Fifth Amendment right to "independent and unbiased grand jury").

A grand jury cannot find probable cause for every element of a crime, as required by the Fifth Amendment, if it is not told what those elements are.  The grand jury must "remain free . . . to operate independently of either prosecuting attorney or judge," but it is a "lay jury" that requires guidance "on the applicable law."  *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 430

(1983) (quotation marks omitted); *cf. Wood v. Georgia*, 370 U.S. 375, 390 (1962) (stressing importance of "independent *and informed* grand jury" (emphasis added)).  This guidance comes from "the prosecutor[,] who draws up the indictment . . . [and] advises the grand jury as to the law."  *Hogan*, 712 F.2d at 759.  "As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law to enable it intelligently to decide whether a crime has been committed."  *United States v. Twersky*, No. S2 92 Cr. 1082 (SWK), 1994 WL 319367, at *4 (S.D.N.Y. June 29, 1994) (quotation marks omitted).

Erroneous legal instructions prevent the grand jury from discharging its constitutional function of determining whether there is probable cause to believe the defendant committed an offense.  Courts have therefore "found error where the government incompletely or erroneously provides legal instruction to the grand jury."  *United States v. Hoey*, No. S3 11-CR-337 PKC, 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014); *accord United States v. Monzon-Luna*, No. 11-cr-722 (RRM), 2014 WL 223100, at *1-3 (E.D.N.Y. Jan. 21, 2014); *United States v. Fleurissaint,* No. 03-cr-906 (RPP), 2004 WL 2101922, at *3-4 (S.D.N.Y. Sept. 21, 2004); *Twersky*, 1994 WL 319367, at *4; *cf. Brito*, 907 F.2d at 394-96 (scrutinizing prosecutor's "questionable instructions" to the grand jury concerning hearsay).[1]

Courts will dismiss the indictment if "the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the

---

[1] Some courts (but not the Second Circuit) have found that the government may simply read the statute to the grand jury, rather than providing legal instructions.  *See United States v. Lopez-Lopez*, 282 F.3d 1, 9 (1st Cir. 2002).  They are wrong.  Where, as here, the elements of a crime are not obvious from (or even mentioned in) the statutory text, reading the statute without explaining the elements will mislead and misinform the grand jury in violation of the Fifth Amendment.  *See, e.g.*, 18 U.S.C. § 1346 (defining the term "scheme or artifice to defraud" as including "a scheme or artifice to deprive another of the intangible right of honest services").  In any event, once a prosecutor provides a grand jury with legal instructions, those instructions must be accurate and complete.  *See Monzon-Luna*, 2014 WL 223100, at *1-3.

4

substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quotation marks omitted).  Indeed, several courts have dismissed indictments based, at least in part, on erroneous or misleading legal instructions:

- *United States v. Bowling*, 108 F. Supp. 3d 343, 352-53 (E.D.N.C. 2015) (dismissing multiple counts where "the government's erroneous legal instruction to the grand jury concerning the Procurement Integrity Act played a significant and impermissible role in the grand jury's decision to indict");
- *United States v. Stevens*, 771 F. Supp. 2d 556, 564-68 (D. Md. 2011) (dismissing indictment where prosecutor gave erroneous advice to grand jury on advice-of-counsel defense that negated wrongful intent);
- *United States v. Cerullo*, No. 05-cr-1190, 2007 WL 2462111, at *2-4 (S.D. Cal. Aug. 28, 2007) (dismissing indictment where prosecutor's failure to accurately and fairly explain an important legal issue "misled the grand jury" and "prejudiced the Defendant");
- *United States v. Breslin*, 916 F. Supp. 438, 442-47 (E.D. Pa. 1996) (dismissing indictment on several grounds, but finding "most disturbing" the prosecutor's erroneous instruction regarding the grand jury's deliberation on a conspiracy charge);
- *United States v. D'Alessio*, 822 F. Supp. 1134, 1135-36, 1145-46 (D.N.J. 1993) (dismissing counts of indictment because the grand jury was erroneously "advised by the government" as to the law);
- *United States v. Peralta*, 763 F. Supp. 14, 17-21 (S.D.N.Y. 1991) (dismissing indictment where there was "grave doubt that the decision to indict was free from the substantial influence" of the prosecutor's "misleading statements of the law" regarding constructive possession of a firearm);
- *United States v. Vetere*, 663 F. Supp. 381, 383-84, 386-87 (S.D.N.Y. 1987) (dismissing indictment because of the prosecutor's misleading "presentation both with respect to the facts and the law");
- *United States v. Roberts*, 481 F. Supp. 1385, 1389-90 & n.10 (C.D. Cal. 1980) (dismissing indictment in part because of "erroneous[]" instructions about the admissibility of polygraph evidence);
- *United States v. Braniff Airways, Inc.*, 428 F. Supp. 579, 586 (W.D. Tex. 1977) (dismissing indictment and finding that erroneous instructions deprived the grand jury of "the complete picture to which it is entitled for a proper decision").

## 2.  The grand jury was not properly instructed on official action

The statutes at issue criminalize *quid pro quo* agreements to exchange bribes for official action.  *See United States v. Skelos*, 707 F. App'x 733, 738 (2d Cir. 2017).  In *McDonnell*, the Supreme Court unanimously held that, in order to avoid serious constitutional concerns, "official action" cannot be construed to encompass every action by a public official in his or her official

capacity.  136 S. Ct. at 2367-73.  Rather, the official must "make a decision or take an action *on* [a] question or matter" that is pending or could be brought before the official.  *Id.* at 2370.  The matter must be "something specific and focused" that "involve[s] a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee."  *Id.* at 2372.  The official must either "deci[de] or act[] on" that matter, agree to do so, or advise or pressure another official to decide or act on it.  *Id.* at 2371-72.  As a result, activities such as "setting up a meeting," "calling another public official," "hosting an event," "deliver[ing] a speech," "speaking with interested parties," or "expressing support" for a decision do not qualify as official action.  *Id.* at 2368, 2370-72.

It is obvious that, like the official act instructions to the trial jury, *see Skelos*, 707 F. App'x at 736-38, the instructions to the grand jury (if any) must have been overbroad.  At the time of the Indictment in 2015, Second Circuit precedent imposed virtually no limits on the definition of official action.  *See United States v. Rosen*, 716 F.3d 691, 700 (2d Cir. 2013).  The government presumably told the grand jury that official action included any act taken under color of official authority, or any act customarily performed by a public official—just as it asked this Court to do in instructing the trial jury (Dkt. 59 at 75-76), and just as it emphatically argued to that same jury (*see, e.g.*, Dkt. 214 at 10-11).  The government has argued throughout these proceedings that official action includes mundane acts like arranging and attending meetings; it is inconceivable that it would have taken a different position before the grand jury.

Indeed, the Indictment describes the "Official Actions Taken by DEAN SKELOS" in expansive terms, encompassing Skelos's various "use[s] [of] his official position to take numerous actions . . . under the color of his official authority and in his official capacity."  (Dkt. 18 ¶ 27).  The list of purported "Official Actions" includes several that clearly do not satisfy

*McDonnell*, such as meeting with Glenwood and PRI lobbyists and arranging a meeting between AbTech and the Department of Health.  (*E.g.*, *id.* ¶¶ 27(a), (f), (h)).  Accordingly, the government must have failed to instruct the grand jury on the proper scope of official action, leading the grand jury to indict on constitutionally invalid theories of guilt.

### 3.    The Skeloses were prejudiced by the instructions, and the Indictment should be dismissed in its entirety

The erroneous grand jury instructions prejudiced the Skeloses and violated their Fifth Amendment rights.  These instructions necessarily create "grave doubt that the decision to indict was free from the substantial influence of such violations."  *Bank of Nova Scotia*, 487 U.S. at 256 (quotation marks omitted).  Accordingly, the Indictment should be dismissed.

The government presented the grand jury with a number of purported "official actions," some of which may satisfy *McDonnell*, and others which plainly do not.  (Dkt. 18 ¶¶ 27(a)-(h)). Where a grand jury is told that a potential defendant has committed multiple offenses, but several of them do not actually qualify as crimes, that grand jury's decision to indict has been affected in ways that are impossible to know.   The grand jury might have taken a different view of Skelos's character or scrutinized the evidence of official action more carefully had it not been misled into believing that every meeting with a lobbyist could be a crime.  *Cf. United States v. Silver*, 864 F.3d 102, 123 n.114 (2d Cir. 2017) (given the erroneous instructions, "the jury could have concluded, easily, but mistakenly, that the meeting itself sufficed to show an official act, and gone no further"); *Hogan*, 712 F.2d at 761 (prosecutor's "numerous speculative references" to other "suspected" crimes "depict[ed] [the defendants] as bad persons" to grand jury and could have improperly "obtain[ed] an indictment for independent crimes").  And even if the grand jury could have found probable cause with appropriate instructions, it still could have chosen not to indict, or to charge fewer counts.  Grand juries have immense discretion to refuse indictment, so

an irregularity in the grand jury can "impermissibly infect the framing of the indictment" even where there is probable cause.  *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986).

Under similar circumstances, courts have dismissed indictments.  For example, in *United States v. D'Alessio*, 822 F. Supp. 1134 (D.N.J. 1993), several counts of the indictment contained both a valid and an invalid theory of mail fraud.  Although the valid theory provided an "independent bas[is] to sustain the charges," the court held that it could not "speculate as to what the grand jury would have done" if it had not been incorrectly "advised by the government" as to the law.  *Id.* at 1135-36; *see also id.* at 1145-46.  As the "answer c[ould] only be derived by resubmission of the matter to a grand jury," the court "dismiss[ed] these counts in their entirety." *Id.* at 1136, 1146.  Similarly, in *United States v. Welch*, 248 F. Supp. 2d 1061 (D. Utah 2001), *rev'd*, 327 F.3d 1081 (10th Cir. 2003), the court dismissed several counts of the indictment because "there [wa]s a possibility that the improper inclusion" of an invalid legal theory "may have influenced the grand jury's decision to indict," even though there were separate allegations supporting a valid theory.  *Id.* at 1067; *see also id.* at 1064-72 & nn.5, 9.

The Court should therefore dismiss the entire Indictment.  Even if certain allegations in the Indictment could state an offense after *McDonnell*, every count was tainted by the government's invalid theory of official action, raising grave doubts as to whether the grand jury's decision was improperly influenced.

### 4.    At a minimum, the vast majority of the charges should be dismissed

Moreover, even if the Court were to conclude that the entire Indictment was not tainted, most of the charges would have to be dismissed.

a.    The charges related to PRI should be dismissed in their entirety.  With respect to the PRI scheme, the Indictment contains only one allegation about the "official action" that Dean Skelos performed:  he allegedly "met with lobbyists for [PRI] and supported legislation critical

to [PRI's] business." (Dkt. 18 ¶ 27(h)). This does not, however, provide adequate assurance that the grand jury would have charged the Skeloses with the PRI scheme if it had been instructed in accordance with *McDonnell*. As the Second Circuit held on appeal, meeting with lobbyists is precisely the type of conduct that no longer qualifies as official action. *See Skelos*, 707 F. App'x at 737. And "support[ing] legislation," without more, would not satisfy *McDonnell*, especially if the phrase refers to simply expressing support for legislation in those same lobbyist meetings. *See McDonnell*, 136 S. Ct. at 2370-71 ("speaking with interested parties" and "expressing support" for an official decision is not official action).

Even if the grand jury meant that Skelos "supported legislation" outside of the lobbyist meetings, this language is too vague to establish that the grand jury found *McDonnell*-type official action. While some types of "support" might satisfy the *McDonnell* definition, others do not. *See id.* Notably, the Indictment does *not* allege that Dean Skelos "voted for" legislation as part of a corrupt exchange with PRI. In stark contrast, it does allege that Skelos "voted for various real estate legislation sought by and favorable to" Glenwood. (Dkt. 18 ¶ 27(c)). The grand jury's understanding of "support" was evidently broader than the formal exercise of power to vote for legislation. (*Compare id.* ¶ 27(c) (Skelos allegedly "voted for" real estate legislation desired by Glenwood), *with id.* ¶ 27(b) (Skelos allegedly "supported" other legislative proposals from Glenwood)).

Consequently, it is not clear that the grand jury found that Dean Skelos sold his vote to PRI, or that it would have indicted on the PRI counts if it had been properly instructed. The PRI counts should therefore be dismissed.

b.      All bribery charges related to Glenwood and AbTech—as opposed to the "gratuit[y]" charges (*id.* ¶ 8, Counts 6-8)—also should be dismissed. With respect to Glenwood,

the Indictment alleges one valid official act (*see id.* ¶ 27(c) (Skelos "voted for" legislation)) and at least one invalid official act (*see id.* ¶ 27(a) (Skelos "met with" lobbyists)).  With respect to AbTech, the Indictment alleges a mix of official acts, at least one of which is invalid.  (*See id.* ¶ 27(f) (Skelos "arrange[d] a meeting")).  All of these are part of a list of acts that Dean Skelos allegedly took (1) "in exchange for the illegal payments" to Adam Skelos and (2) "to ensure the[se] [payments] would continue."  (*Id.* ¶ 27).  The list does not make clear, however, which acts were supposedly consideration for past payments and which acts were supposedly inducements for future payments.

The grand jury could have found, for example, that Dean Skelos (1) took meetings in return for payments, but (2) did not vote for legislation in return for payments, and instead voted for legislation only to encourage future payments.  Before *McDonnell*, these findings would have permitted the grand jury to indict Skelos for bribery.  After *McDonnell*, however, these findings cannot support bribery charges.  Exchanging meetings for payment is not bribery.  *See* 136 S. Ct. at 2372.  And voting for legislation in order to induce future payments, rather than as consideration for a past payment or promise of payment, is not bribery either.  Bribery requires a *quid pro quo*:  the official accepts payment, or a promise of payment, in exchange for agreeing to take official action in the future.  *See United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999).  If, however, the official takes an official action and later accepts payment as a reward for that act, the reward is not a bribe, because it was not paid or promised before the official act.  At most, it is an illegal "gratuity"—a reward tied to a specific official act.  *See id.*

It is therefore possible that because the grand jury did not understand the scope of "official action," it indicted for bribery even though it only found probable cause to believe that Skelos accepted gratuities for the few official acts that satisfy *McDonnell*.  If properly instructed,

the grand jury may not have indicted for bribery—that is, the Hobbs Act extortion and honest-services fraud counts[2] and the bribery portion of the § 666 counts.  The Court should therefore dismiss these counts regardless of whether it finds that the others are valid.

**B.      Alternatively, The Court Should Direct The Government To Provide The Grand Jury Instructions To The Defense Or Inspect The Instructions Itself**

If the government contends that it gave the grand jury correct legal instructions, the Court should order that these instructions be disclosed to the defense, or to the Court.

While matters occurring before the grand jury are "entitled to a presumption of secrecy." *United States v. Ulbricht*, 858 F.3d 71, 107 (2d Cir. 2017) (quotation marks omitted), the court "may authorize disclosure . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii).  The defendant can overcome the presumption by showing a "particularized need that outweighs the need for secrecy"—that is, by showing that (1) "the material . . . is needed to avoid a possible injustice," (2) this need "is greater than the need for continued secrecy," and (3) the "request is structured to cover only material so needed."  *Ulbricht*, 858 F.3d at 107 (quotation marks omitted).  "[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."  *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979).

That standard is easily met here.

1.      The Skeloses have a particularized need for the grand jury instructions.  As explained above, there is good reason to believe that these instructions were erroneous and that this error influenced the grand jury's decision to indict.  If so, the Skeloses are entitled to the

---

[2] The honest-services statute and Hobbs Act have been held to cover bribes but not gratuities. *See United States v. Ganim*, 510 F.3d 134, 142-50 (2d Cir. 2007).

dismissal of the Indictment in whole or in part.  This is precisely the sort of situation in which disclosure is justified.  *See* Fed. R. Crim. P. 6(e)(3)(E)(ii); *see also United States v. Way*, No. 1:14-CR-00101-DAD-BAM, 2015 WL 8780540, at * 3-5 & n.4 (E.D. Cal. Dec. 15, 2015) (ordering disclosure of grand jury instructions because a "change in Supreme Court authority makes it far more likely that the defendants could argue in a subsequent motion to dismiss that the government mislead [*sic*] the jury, however unintentionally"); *United States v. Morales*, No. CR. S-05-0443 WBS, 2007 WL 628678, at *4 (E.D. Cal. Feb. 28, 2007) ("Release of grand jury instructions may be proper when the Supreme Court has altered precedent upon which instructions were based.").

2.     The Skeloses' need for the grand jury instructions easily outweighs the interest in continued secrecy.  Unlike the identities or testimony of grand jury witnesses, the legal instructions given to the grand jury "do not implicate any of the concerns typically cited in support of grand jury secrecy." *United States v. Facteau*, No. 15-cr-10076-ADB, 2016 WL 4445741, at *4 (D. Mass. 2016); *see also id.* at *5 (noting that there is "no reason why the prosecutors' instructions to the grand jury should be kept secret").  Disclosing these instructions does not make it easier for the contemplated defendant to "escape," "importun[e] the grand jurors," or "tamper[] with the witnesses"; nor does it inhibit the grand jury's "deliberations" or discourage "free and untrammeled disclosures" from witnesses.  *Ulbricht*, 858 F.3d at 106 (listing the "rationales" for grand jury secrecy).  For this reason, several courts have found that defendants need not even show a particularized need for the disclosure of legal instructions to the grand jury.  *See, e.g.*, *United States v. Belton*, No. 14-CR-00030-JST, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015) (collecting cases); *United States v. Talao*, No. CR-97-0217-VRW,

1998 WL 1114043, at *12 (N.D. Cal. Aug. 14, 1998), *vacated in part on other grounds*, 1998

WL 1114044 (N.D. Cal. Oct. 1, 1998).[3]

Furthermore, several years have passed since the grand jury returned the Indictment, and

the matters before the grand jury have already been the subject of a public trial and appeal.  Very

little of what the grand jury heard or did remains secret.  Given the government's arguments

throughout this case and the way it framed the Indictment, it would hardly be surprising that its

legal instructions on official action were incorrect.  There is, of course, no legitimate interest in

hiding the fact that the grand jury received incorrect instructions.  Regardless, any such interest

can be preserved by ensuring that any documents quoting those instructions are filed under seal.

3.      Finally, as explained above, the Skeloses' request is narrowly tailored to seek

only the material relevant to their motion to dismiss:  the grand jury instructions.  This is not a

fishing expedition for other misconduct in the grand jury proceedings.

The Skeloses are therefore entitled to review the grand jury instructions.  But in the

alternative, and at a minimum, the Court can preserve grand jury secrecy by inspecting the

instructions *in camera* to determine whether disclosure is warranted.  Courts regularly use this

procedure in assessing defendants' challenges to the accuracy of grand jury instructions.  *See,*

*e.g.*, *United States v. Bravo-Fernandez*, 239 F. Supp. 3d 411, 412-13, 415-17 (D.P.R. 2017)

(ordering *in camera* review of grand jury instructions after First Circuit vacated convictions

because trial jury was erroneously instructed on elements of § 666); *United States v. FedEx*

---

[3] *Cf. United States v. Alter*, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973) (finding the defendant "was entitled to know the content of the court's charges to the grand jury" because "[t]he proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not"); *United States v. Fuentes*, No. CR.S-07-0248 WBS, 2008 WL 2557949, at *4 (E.D. Cal. June 24, 2008) (same).

*Corp.*, No. C14-380 CRB, 2016 U.S. Dist. LEXIS 6155, at \*2, \*13-15 (N.D. Cal. Jan. 19, 2016) (inspecting grand jury instructions *in camera* and then granting defendant's motion for disclosure of instructions); *Hoey*, 2014 WL 2998523, at \*3 (ordering *in camera* review of grand jury instructions because of a significant "change in the law" made it possible that "the grand jury did not receive the possible instructions"); *United States v. Ceneus*, No. 10-CR-27-SPM/GRJ, 2011 WL 5547107, at \*2 (N.D. Fla. 2011) (ordering *in camera* review of "non-testimonial portions of the grand jury proceedings" to assess whether the prosecutor "improperly instructed the grand jury"); *Stevens*, 771 F. Supp. 2d at 564, 568 (dismissing indictment after ordering *in camera* review of grand jury transcripts, including instructions); *United States v. Ho*, No. CRIM. 08-00337 JMS, 2009 WL 2591345, at \*3-5 (D. Haw. Aug. 20, 2009) (inspecting grand jury instructions *in camera* because the prosecutor had made "on-the-record statements" reflecting a misunderstanding of a necessary element and, as a result, the court could not "rule out that the government did not properly instruct the grand jury"); *Twersky*, 1994 WL 319367, at \*4-5 (ordering *in camera* review to determine whether jury instructions were correct in light of intervening Supreme Court decision); *Peralta*, 763 F. Supp. at 15-21 (dismissing indictment following *in camera* review of erroneous instructions to the grand jury).

## II.   THE BRIBERY CHARGES SHOULD BE DISMISSED BECAUSE THE GRAND JURY DID NOT FIND THAT SKELOS AGREED TO ACT ON SPECIFIC MATTERS

The bribery charges against the Skeloses (that is, everything except the gratuity charges) suffer from yet another fatal flaw.  For most counts, the Indictment does not allege that Dean Skelos agreed to act on any *specific* official matter at the time he allegedly solicited or accepted payments for Adam Skelos.  Nor was the grand jury instructed to find this essential element. Thus, under *McDonnell*, the Skeloses were not properly indicted for bribery, and the bribery charges must be dismissed.

14

A.   *McDonnell* **Does Not Permit Prosecution Unless The Public Official Agrees To Act On A Focused, Concrete, And Specifically Identified Matter**

*McDonnell* did not merely clarify "the nature of the power that the government [i]s required to prove the [public official] exercised or promised to exercise" in a corruption prosecution, although this was the principal effect of the Supreme Court's decision.  *United States v. Boyland*, 862 F.3d 279, 291 (2d Cir. 2017).  The Court *also* made clear that the public official must agree to exercise power of this sort on a "focused and concrete" matter that is specifically "identified" at the time of the corrupt bargain.  *McDonnell*, 136 S. Ct. at 2369-70, 2372, 2374.

As explained above, *McDonnell*'s definition of official action has two parts:  (1) a "decision or action" on (2) a "question or matter."  *Id.* at 2368-70.   The second requirement (the "matter") refers to "a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee," and "that is pending or may by law be brought before a public official."  *Id.* at 2372 (quotation marks omitted).  With respect to this "matter" requirement, the Supreme Court emphasized the need for two types of specificity.

*First*, the matter must be identified with precision.  The government "must identify" a specific matter on which the public official agreed to act, and the jury may convict only after "identify[ing]" the same matter and concluding that the official "made a decision or took an action—or agreed to do so—*on* the identified [matter]."  *Id.* at 2368, 2374; *see also id.* at 2372 (official must act "on *that* [matter], or agree to do so") (emphasis added); *Silver*, 864 F.3d at 117; *Boyland*, 862 F.3d at 289.

*Second*, the identified matter "must be more specific and focused than a broad policy objective."  *McDonnell*, 136 S. Ct. at 2374.  The Court repeatedly underscored the need for

15

"something specific and focused"—"the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." *Id.* at 2369, 2372, 2374. Analyzing the matters on which Governor McDonnell allegedly took official actions, the Court held that "Virginia business and economic development" was not sufficiently "focused and concrete" to qualify as a matter, since "[e]conomic development is not naturally described as a matter 'pending' before a public official—or something that may be brought 'by law' before him." *Id.* at 2369. By contrast, "focused and concrete" policy decisions before Governor McDonnell, such as whether state universities should initiate a research study of a particular drug, whether a particular state commission should allocate grant money to that study, and whether the state health insurance plan should cover that drug, did qualify as matters. *Id.* at 2370.

The upshot of these specificity requirements is that there is no crime unless the public official agrees to act on a specifically identified matter. The Court in *McDonnell* expressly stated that "the offense [of bribery] is completed at the time when the public official receives a payment in return for his agreement to perform *specific* official acts." *Id.* at 2365 (emphasis added) (quoting *Evans v. United States*, 504 U.S. 255, 268 (1992)); *see also Sun-Diamond*, 526 U.S. at 406 ("The insistence upon an 'official act,' carefully defined, seems pregnant with the requirement that some particular official act be identified and proved."). The public official's intent "at the time he accept[s]" a benefit determines whether he has committed a crime. *McDonnell*, 136 S. Ct. at 2374; *see also id.* at 2371 (jury must "determine whether the public official agreed to perform an 'official act' at the time of the alleged *quid pro quo*"). If the official agrees generally to act for the benefit of the bribe giver as opportunities arise, but does not agree to act on a specific matter, it is impossible to "identify" any matter for purposes of the official action analysis, *id.* at 2368, 2374, let alone verify that this matter is sufficiently "focused

and concrete," *id.* at 2369-72, 2374.  An agreement of this sort may be "tawdry" and

"distasteful," but it is not illegal.  *Id.* at 2375.[4]

Although the Second Circuit had opined before *McDonnell* that "it is sufficient if the

public official understands that he or she is expected as a result of the payment to exercise

particular kinds of influence . . . as specific opportunities arise," *United States v. Ganim*, 510

F.3d 134, 145 (2d Cir. 2007) (quotation marks omitted), this language does not "convey

[*McDonnell*'s] requisite specificity."  *Silver*, 864 F.3d at 119.  Under *McDonnell*, an agreement

to "exercise particular kinds of influence" suffices only if the parties agree, implicitly or

explicitly, on the specific matter or matters the public official will seek to influence through

official action.[5]

Requiring the government to prove that the parties agreed on the specific matter is

necessary to avoid the "significant constitutional concerns" the Supreme Court identified in

*McDonnell*.  136 S. Ct. at 2372-73.  Absent this requirement, a public official who receives any

benefit from a constituent might be reluctant to take official action that might favor the

constituent, lest he be accused of performing acts for the constituent "as opportunities arise."

---

[4] The government has effectively conceded this point already.  In its appellate brief, the government argued that this Court's instructions to the jury satisfied *McDonnell* and pointed to the instruction requiring proof that "Dean Skelos acted corruptly with the intent to be influenced or rewarded with respect to a *transaction* of the State of New York."  Br. for U.S., *United States v. Skelos*, 2017 WL 75595, at *51.  The government claimed this language "made clear that the act taken 'under color of official authority' must focus on Dean Skelos' *official decision-making* about a *specific issue or transaction*," thus acknowledging that *McDonnell* requires that the public official accept a benefit intending to act on a "specific issue or transaction."  *Id.*

[5] In deciding the appeal, the Second Circuit used the "particular kinds of influence" language in passing.  *See Skelos*, 707 F. App'x at 738 (quoting *Rosen*, 716 F.3d at 700).  The parties did not, however, litigate the necessity of identifying a particular matter; nor was that language relevant to the Court's holding, which concerned the sufficiency of the evidence that Dean Skelos traded specific acts for the payments to Adam.  *See id.* at 738-39.

17

Similarly, the constituent might be reluctant to lobby for official action, even if it is unrelated to the benefit, to avoid the appearance of having bought that official action on an "as-needed" basis. *See id.* Constituents confer benefits on public officials all the time to "build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future." *Sun-Diamond*, 526 U.S. at 405. This is not a crime. *See id.* at 405-07; *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 359 (2010) ("Favoritism and influence are not . . . avoidable in representative politics.") (quotation marks omitted). It is easy, however, to mistake this practice for an attempt to buy official action while leaving the details unspecified.

To prevent such mistakes, *McDonnell* requires the government to prove an agreement to exchange bribes for official acts on an "identified," "specific," and "focused" matter. 136 S. Ct. at 2374. While this may exclude other conduct the public perceives as "corrupt" from the federal criminal laws, the Supreme Court has consistently opted for underinclusive rather than overinclusive definitions of criminal corruption in order to avoid sweeping in ordinary political conduct. *See id.* at 2372-73; *Skilling v. United States*, 561 U.S. 358, 408-11 (2010); *Sun-Diamond*, 526 U.S. at 406-12; *McCormick v. United States*, 500 U.S. 257, 272-74 (1991). The conduct of public officials can be, and is, regulated through other means, including administrative regulations and ethics rules. *See, e.g.*, *Sun-Diamond*, 526 U.S. at 409-12. "Given that reality, a statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter." *Id.* at 412; *accord McDonnell*, 136 S. Ct. at 2373.

**B.     The Court Should Dismiss The Glenwood and PRI Bribery Counts For Failure To Allege That Dean Skelos Agreed To Act On A Specific Matter**

For the Glenwood and PRI counts, the Indictment fails to allege that Dean Skelos agreed to perform official acts on any specific, concrete matter at the time he solicited or accepted

payments for Adam Skelos.[6]  These counts therefore fail to state bribery offenses that satisfy *McDonnell* and must be dismissed.  *See United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012) ("[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute."); *Pirro*, 212 F.3d at 92-93 ("An indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendments.").

The Indictment repeatedly alleges that the Skeloses obtained payments from Glenwood and PRI with offers and threats of generic, unspecified "official action."[7]  While the Indictment does list specific acts that Dean Skelos allegedly took "as the opportunities arose" "in exchange for the illegal payments" to Adam Skelos and "to ensure they would continue" (Dkt. 18 ¶ 27), it does not allege that Dean Skelos agreed, "at the time" he solicited or accepted payment, that he would take these particular actions or actions on any concrete, identified matter.  *McDonnell*, 136 S. Ct. at 2365, 2371, 2374.

Instead, the Indictment implies that Dean Skelos insinuated to Glenwood and PRI that he would help them if they paid Adam Skelos and would harm them if they did not.  If true, this would be improper and disturbing, but it would not be criminal.  A generic solicitation of this sort does not satisfy *McDonnell*, as it does not relate to any "focused," "concrete," or specifically

---

[6] The Indictment alleges that the Skeloses extorted AbTech by threatening to block a potential contract with Nassau County.  (Dkt. 18 ¶ 14).  The AbTech counts may state an offense to the extent they are based on this allegation.

[7] *See* Dkt. 18 ¶ 8 (alleging that Skeloses "referred implicitly and explicitly to [Dean Skelos]'s power to reward and punish through official action"); *id.* ¶ 9 (alleging that Dean Skelos "foster[ed] the expectation that [he] would take official action favorable to and would refrain from taking official action to the detriment of [Glenwood]"); *id.* ¶ 12 (alleging that Dean Skelos told a Glenwood representative "that he would take detrimental action against real estate developers who did not support him"); Counts 1-8 (referring generically to "official actions" and government "transactions").

"identified" matter that is pending before the official or that could be brought before him. *McDonnell*, 136 S. Ct. at 2369-70, 2372, 2374.

The Indictment therefore fails to allege an essential component of *quid pro quo* bribery as to Glenwood and PRI, and the deficient counts should be dismissed.

### C.   The Court Should Dismiss All Of The Bribery Counts Because The Grand Jury Was Improperly Instructed On This Element

In addition, even if some of the bribery counts are facially valid, all of them are tainted by the government's failure to properly instruct the grand jury that the public official must agree, at the time of the bribe, to take official action on a concrete and specifically identified matter.

It is evident that the government did not correctly instruct the grand jury on this requirement, which flows from *McDonnell*.  *First*, the government had no reason to do so, since the Fourth Circuit had just affirmed Governor McDonnell's convictions.  *Second*, the government consistently advocates for jury instructions explaining that it is illegal for an official to accept payment for agreeing to provide unspecified, favorable action on an "as needed" basis, or "as opportunities arise."  (*See* Dkt. 59 at 26, 28, 40, 47; *cf.* Dkt. 27 at 26-27).  *Third*, as explained above, the Indictment confirms that the grand jury thought it was sufficient for Skelos to have offered generic "official action," untethered to any particular matter.

This instructional error prejudiced the Skeloses, as there is "grave doubt" the grand jury properly indicted them for bribery.  *Bank of Nova Scotia*, 487 U.S. at 256.  The grand jury's understanding of bribery was fundamentally mistaken, infecting its assessment of the charges as a whole and requiring dismissal of the Indictment.  *See, e.g.*, *D'Alessio*, 822 F. Supp. at 1135-36, 1145-46.  Furthermore, nothing in the Indictment suggests that the grand jury found probable cause to believe that the Glenwood and PRI bribery schemes were sufficiently specific and concrete to pass muster under *McDonnell*.  At a minimum, those counts should be dismissed.

III.    **THE GRATUITY CHARGES SHOULD BE DISMISSED**

The gratuity charges are critically flawed in several respects and should be dismissed.

A.      **Section 666 Does Not Criminalize Gratuities**

First, the gratuity charges must be dismissed because § 666 does not prohibit gratuities. While bribery requires a *quid pro quo* exchange of payments for official action, a gratuity is "a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken." *Sun-Diamond*, 526 U.S. at 404-05. The Second Circuit has held that § 666 covers gratuities in addition to bribes, but its reading of the statute is wrong, as we briefly explain below to preserve the issue in the event of an appeal.

The corruption statute for federal officials, 18 U.S.C. § 201, unambiguously *does* criminalize both bribes and gratuities in separate subsections. *See Sun-Diamond*, 526 U.S. at 404. The bribe-payor provision covers anyone who "corruptly gives, offers or promises anything of value to any public official . . . with intent . . . to influence any official act." 18 U.S.C. § 201(b)(1)(A). The bribe-recipient provision covers any "public official" who "corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value . . . in return for . . . being influenced in the performance of any official act." *Id.* § 201(b)(2)(A). The gratuity-payor provision covers anyone who "gives, offers, or promises anything of value to any public official . . . for or because of any official act." *Id.* § 201(c)(1)(A). The gratuity-recipient provision covers any "public official" who "demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of any official act." *Id.* § 201(c)(1)(B).

Section 666, by contrast, does not contain separate subsections for bribes and gratuities. The provision for payors covers any person who "corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent" of a federally-

21

funded organization or government "in connection with any business, transaction, or series of

transactions of such organization [or] government."  18 U.S.C. § 666(a)(2).  The provision for

recipients covers any "agent" of a federally-funded organization or government who "corruptly

solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of

value from any person, intending to be influenced or rewarded in connection with any business,

transaction, or series of transactions of such organization [or] government."  *Id.* § 666(a)(1)(B).

Pointing to the "influence or reward" language in § 666, the Second Circuit has held that

"'influence' connotes bribery" and "'reward' connotes an illegal gratuity."  *Ganim*, 510 F.3d at

150.  This is wrong.  As explained in *United States v. Fernandez*, 722 F.3d 1 (1st Cir. 2013):

> [T]he word "reward" does not create a separate gratuity offense in § 666, but
> rather serves a more modest purpose:  it merely clarifies "that a bribe can be
> promised before, but paid after, the official's action on the payor's behalf."
> *United States v. Jennings,* 160 F.3d 1006, 1015 n.3 (4th Cir. 1998).  "This
> definition accords with the traditional meaning of the term 'reward' as something
> offered to induce another to act favorably on one's behalf (for example, a bounty
> offered for the capture of a fugitive)."  *Id.*  Under this reading, the terms
> "influence" and "reward" each retain independent meaning. . . .  [But] [b]oth of
> these situations involve a quid pro quo, and both therefore constitute bribes.

*Id.* at 23.  At a minimum, the word "reward" is ambiguous, *cf. Ganim*, 510 F.3d at 151, and the

court should consult the structure and history of § 666, which confirm it is limited to bribery.

*First*, there is an "important structural difference between §§ 666 and 201:  § 666 does

not have separate bribery and gratuity subsections."  *Id.* at 24.  It is highly "unlikely that

Congress would condense two distinct offenses into the same subsection in § 666 when [§ 201,]

the statute upon which it is based[,] has separate subsections for each offense."  *Id.* at 24-25.

*Second*, the statutes' penalty provisions make clear that Congress did not intend for § 666

to cover gratuities.  Federal officials can receive up to fifteen years for accepting bribes, but only

up to two years for accepting gratuities.  18 U.S.C. § 201(b), (c).  Non-federal officials can

receive up to ten years for accepting *any* payment that violates § 666.  *Id.* § 666(a).  Extending

§ 666 to gratuities would expose non-federal officials who accept gratuities to sentences five times longer than those imposed on federal officials. *United States v. Crozier*, 987 F.2d 893, 900 (2d Cir. 1993); *Fernandez*, 722 F.3d at 24. Congress surely cannot have intended to punish non-federal officials more harshly. Moreover, extending § 666 to gratuities also has the effect of attaching the same ten-year maximum sentence to both bribes and gratuities. But Congress did not deem bribes and gratuities equally culpable, which is why § 201 provides starkly different punishments for the two crimes. *Sun-Diamond,* 526 U.S. at 405; *Fernandez*, 722 F.3d at 25. A single punishment applies to § 666 because it does *not* cover these two different offenses.

*Third*, the legislative history confirms that § 666 does not cover gratuities. Section 666 was enacted in the Comprehensive Crime Control Act, Pub. L. No. 98-473, 98 Stat. 1837 (1984). The bill and Senate report refer to bribery but never mention gratuities. *See id.* § 1104; S. Rep. No. 98-225, 369-70 (1984); *Fernandez*, 722 F.3d at 21; *United States v. Jackowe*, 651 F. Supp. 1035, 1036 (S.D.N.Y. 1987). Moreover, § 666 was amended in 1986 to more closely resemble "§ 201's *bribery* provision," not its gratuity provision. *Fernandez*, 722 F.3d at 22.

*Fourth*, any ambiguity in § 666 should be resolved in favor of a narrow construction that does not cover gratuities, which is consistent with the rule of lenity and avoids constitutional concerns such as fair notice and federalism. *See McDonnell*, 136 S. Ct. at 2372-73; *Yates v. United States*, 135 S. Ct. 1074, 1088 (2015) (plurality); *Jackowe*, 651 F. Supp. at 1036.

### B. The Indictment Does Not Adequately Allege That Any Of The Payments Were Illegal Gratuities

Even if § 666 prohibited gratuities, the Indictment does not adequately allege that any of the payments were, in fact, illegal gratuities.

Gratuity statutes create a significant risk that innocent conduct will be prosecuted, because they do not require proof of a *quid pro quo* exchange for official action. For this reason,

"to supply a limiting principle that would distinguish an illegal gratuity from a legal one," the Supreme Court has imposed "a strictly worded requirement that the government show a link to a 'specific official act.'" *Ganim*, 510 F.3d at 146; *accord United States v. Tavares*, 844 F.3d 46, 55-56 (1st Cir. 2016).  As the government has conceded (Dkt. 27 at 27), "some particular official act" must "be identified and proved," and the gratuity payment must be "linked to [this] identifiable act." *Sun-Diamond*, 526 U.S. at 406; *see also id.* at 408 (violation must be "linked to a particular 'official act'").  Linking the gratuity to a particular act is necessary to avoid the "peculiar result[]" of criminalizing routine political conduct, such as the giving of "token gifts" to officials "based on [their] official position." *Id.* at 406.

The Indictment lists a number of payments made to Adam Skelos and a number of purported official acts taken by Dean Skelos, but it does not allege that any particular payment was made to reward any particular act.  (Dkt. 18 ¶¶ 8-11, 13-27).  Without such an allegation, there is no assurance that the government is prosecuting actual *gratuities*, as opposed to gifts that Adam Skelos received because of his father's official position.  Vague allegations that Dean Skelos solicited payment "intending to be . . . rewarded in connection with [official] business" (*id.* ¶¶ 43, 45, 47) do not suffice.  The government must link payments to a "particular," "identifiable" act, not unspecified official action.  *Sun-Diamond*, 526 U.S. at 406, 408.

## IV.   IF THE GOVERNMENT ARGUES THAT *MCDONNELL* DOES NOT APPLY TO SECTION 666, THE SECTION 666 CHARGES ARE UNCONSTITUTIONAL

*McDonnell*'s holding was dictated by constitutional avoidance principles that apply to all federal corruption offenses.  *See* 136 S. Ct. at 2372-73.  Although one panel of the Second Circuit suggested in *dicta* that a different standard might apply to § 666, *see Boyland*, 862 F.3d at 291, in this case the Court of Appeals rejected the government's argument that *McDonnell* does not apply to § 666, finding that aspect of *Boyland* inapplicable here.  *See Skelos*, 707 F. App'x at

24

737-38.  At least where, as here, the government has charged the defendant with selling "official

acts" (Dkt. 18 ¶ 27), *McDonnell* squarely applies.  *See id.* at 738.

The government appears to concede, albeit in somewhat cagey language, that on retrial

the Court must instruct the jury to apply *McDonnell*'s definition of official action to all of the

charged offenses, including § 666.  (*See* Declaration of Fabien Thayamballi ("Thayamballi

Decl.") Ex. 2 at 3 ("[T]he Government expects to request—in an abundance of caution—that the

jury be instructed on the key principles of *McDonnell* in connection with the charges under

Section 666."))  However, it has previously argued (including, as noted above, in this very case)

that *McDonnell* does not apply to § 666.  *See* Supp. Br. for U.S., *United States v. Skelos*, 2017

WL 3505148, at *2-8.[8]  In the event the government takes that position, the Court should dismiss

the § 666 charges because without *McDonnell*'s official act limitation, the statute would be

unconstitutional:  It would (1) violate the First Amendment by chilling political discourse, (2) be

unconstitutionally vague and fail to provide adequate notice in violation of the Due Process

Clause, and (3) undermine federalism and Tenth Amendment principles.  *See McDonnell*, 136 S.

Ct. at 2372-73.

A.    **Without The "Official Act" Requirement, Section 666 Would Violate The First Amendment**

Under the overbreadth doctrine, a statute violates the First Amendment if it "criminalizes

a substantial amount of protected expressive activity."  *United States v. Williams*, 553 U.S. 285,

297 (2008); *see also Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (overbroad criminal statutes

that "'chill' constitutionally protected speech" barred by First Amendment).  Where First

Amendment rights are at stake, "[c]riminal statutes must be scrutinized with particular care" and

---

[8]  This is simply wrong, as we explained on appeal.  *See* Supp. Br. for Dean Skelos, 2017 WL
3505149, at *6-12; *see also* Br. for Dean Skelos, 2016 WL 5929119, *38-40.

"those [statutes] that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 459 (1987).

Significantly, because an overbreadth challenge attacks the facial validity of the statute, a court can and should "take into account possible applications of the statute in other factual contexts besides that at bar." *NAACP v. Button*, 371 U.S. 415, 432 (1963); *see also New York v. Ferber*, 458 U.S. 747, 769 (1982) ("[W]e have allowed persons to attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity."); *Dickerson v. Napolitano*, 604 F.3d 732, 742 (2d Cir. 2010) (same).

Section 666 would be unconstitutionally overbroad if not limited by *McDonnell*.  While the statute prohibits *quid pro quo* bribery, "nearly anything a public official accepts—from a campaign contribution to lunch—counts as a *quid*." *McDonnell*, 136 S. Ct. 2372.  If, in addition, "nearly anything a public official does—from arranging a meeting to inviting a guest to an event—count[ed] as a *quo*," § 666 would threaten to criminalize the everyday interactions between public officials and constituents that make up the "basic compact underlying representative government." *Id.*

Campaign contributions, in particular, constitute expressive activity protected by the First Amendment, *see Citizens United*, 558 U.S. at 350, 359; *McCormick*, 500 U.S. at 272-74, and they are often given in exchange for access to politicians in the form of meetings and invitations to events.  Lobbying is also "protected by the First Amendment," *Regan v. Taxation Without Representation of Wash.*, 461 U.S. 540, 552 (1983) (Blackmun, J., concurring), and lobbyists frequently give nominal gifts to public officials in the course of meeting with them to discuss

26

policy matters.  If § 666 did not incorporate the limited definition of "official action" established in *McDonnell*, these practices would be criminal.  It was precisely because such scenarios are so "commonplace" and the threat of casting a "pall of potential prosecution" over them so severe that the Supreme Court held that the official act requirement was constitutionally required. *McDonnell*, 136 S. Ct. at 2372.  Thus, without *McDonnell*'s official act requirement, § 666 would violate the First Amendment.

### B.      Without The "Official Act" Requirement, Section 666 Would Be Unconstitutionally Vague

In addition, if *McDonnell* did not limit § 666, it would be unconstitutionally vague as applied here.  Under the void-for-vagueness doctrine, "a penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  If it does not, the statute is unconstitutionally vague.  *See id.* at 357-62; *Dickerson*, 604 F.3d at 745-47.

Section 666 does not specify the types of official action that it covers.  Instead, it refers generally to payments "in connection with any business, transaction, or series of transactions of [a federally-funded entity] involving any thing of value of $5,000 or more."  18 U.S.C. § 666(a)(1)(B).  The statute provides no notice that paying for a meeting with a public official would fall within this statutory language, and it affords prosecutors boundless authority to interpret official "business" broadly enough to encompass such meetings.  Indeed, *McDonnell* holds that a bribery statute "avoids this 'vagueness shoal'" only if it is limited by a bright-line rule:  the payment must be made in exchange for a formal exchange of governmental power, and not merely a meeting.  136 S. Ct. at 2373 (quoting *Skilling*, 561 U.S. at 368).

If the jury were permitted to find a violation of § 666 based on meetings arranged and attended by Dean Skelos, which could well occur if the Court does not apply *McDonnell* to § 666, this would violate due process, because of the lack of fair notice that § 666 criminalizes such conduct. At a minimum, any theories of § 666 liability inconsistent with *McDonnell* should be excised from the Indictment and dismissed in order to protect the Skeloses' rights to due process.

### C.   Without The "Official Act" Requirement, Section 666 Would Violate The Tenth Amendment And Constitutional Principles Of Federalism

Although federalism is a crucial guiding principle in many areas of the law, "[p]erhaps the clearest example of traditional state authority is the punishment of local criminal activity." *Bond v. United States*, 134 S. Ct. 2077, 2089 (2014); *see also Kelly v. Robinson*, 479 U.S. 36, 47 (1986) ("The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States."). A state's sovereign interest in retaining criminal jurisdiction should be accorded significant weight when the crime at issue relates to the functioning of state government. Because a "State defines itself as a sovereign through the structure of its government, and the character of those who exercise government authority," it is the "prerogative" of the state "to regulate the permissible scope of interactions between state officials and their constituents." *McDonnell*, 136 S. Ct. at 2373 (quotation marks omitted); *accord Tavares*, 844 F.3d at 54.

New York State takes a narrow view of bribery. Consistent with *McDonnell*, New York law limits bribery to transactions in which the thing of value is given in exchange for the public official's "vote, opinion, judgment, action, decision or exercise of discretion as a public servant"—that is, an official act. N.Y. Penal Law §§ 200.00-200.04, 200.10-200.12. Interpreting federal criminal law to prohibit meetings and other conduct that New York has

chosen not to criminalize would flout *McDonnell*'s admonition that it is not up to federal

prosecutors to set "standards of good government for local and state officials."  136 S. Ct. at

2373 (quotation marks omitted).  Accordingly, the Court should dismiss the § 666 charges if the

government argues, and the Court holds, that *McDonnell* does not apply to § 666.

## V.    THE HONEST-SERVICES FRAUD STATUTE IS UNCONSTITUTIONALLY VAGUE

Count 2, which charges the Skeloses with conspiring to commit honest-services fraud

(Dkt. 18 ¶¶ 33-35), should be dismissed because the statute is unconstitutionally vague.  The

Supreme Court has twice chosen to construe the honest-services statute rather than strike it down

as unconstitutionally vague.  *See McDonnell*, 136 S. Ct. at 2375; *Skilling*, 561 U.S. at 403-09.

*Skilling* limited honest-services fraud to offenses involving bribery and kickbacks, and

*McDonnell* further limited bribery by requiring a specific sort of "official action."  Ultimately,

however, these efforts to construe the statute do not resolve the vagueness problem, as we

explain below to preserve the issue in the event of an appeal.

Honest-services fraud is, in this case, a species of wire fraud, *see* 18 U.S.C. § 1343, in

which the defendant engages in a "scheme or artifice to deprive another of the intangible right of

honest services."  *Id.* § 1346.  The statute does not define the "intangible right of honest

services," and as the Supreme Court has recognized, courts have had immense difficulty

construing that extraordinarily vague phrase.  *See Skilling*, 561 U.S. at 403, 405 (majority); *id.* at

416-20 (Scalia, J., concurring in part and in the judgment).

This vagueness compels the conclusion that the statute is unconstitutional.  Plainly, the

statute itself does not define criminal conduct "'with sufficient definiteness that ordinary people

can understand what conduct is prohibited,' or 'in a manner that does not encourage arbitrary and

discriminatory enforcement,'" *McDonnell*, 136 S. Ct. at 2373 (quoting *Skilling*, 561 U.S. at 402-

29

03).  There is no way to clearly delineate the "intangible right of honest services," which is especially disturbing given that the violation of this purported right may be punished by up to 20 years in prison.  *See* 18 U.S.C. §§ 1343, 1346.  A shapeless and subjective inquiry of this sort requires "guesswork and intuition," *Johnson v. United States*, 135 S. Ct. 2551, 2559 (2015), and fails to provide "an ascertainable standard of guilt," *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921), rendering the statute constitutionally infirm.

The Supreme Court's attempted clarifications of the statute in *Skilling* and *McDonnell* were unavailing because only Congress can bring the necessary precision to the statutory text. "The *terms* of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties," and "a statute which either forbids or requires the doing of an act in *terms* so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Cline v. Frink Dairy Co.*, 274 U.S. 445, 459 (1927) (emphasis added) (quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)).  Just as the legislative history of a statute does not provide fair warning that the statute may sweep more broadly than its text suggests, *see United States v. R.L.C.,* 503 U.S. 291, 307-11 (1992) (Scalia, J., concurring in part and in the judgment of the plurality); *Crandon v. United States*, 494 U.S. 152, 160 (1990), a statute "that is unconstitutionally vague cannot be saved . . . by judicial construction that writes in specific criteria that its text does not contain."  *Skilling*, 561 U.S. at 415-16 (Scalia, J., concurring in part and in the judgment).

Even if judicial construction could save a hopelessly vague statute, the Supreme Court has not succeeded here.  *Skilling* and *McDonnell* defined honest-services fraud as "bribery" in "violation of a fiduciary duty," 561 U.S. at 407, and involving a specific sort of "official action,"

30

135 S. Ct. at 2371-72.  But this does "not solve the most fundamental indeterminacy:  the

character of the 'fiduciary capacity' to which the bribery and kickback restriction applies."

*Skilling*, 561 U.S. at 421 (Scalia, J., concurring in part and in the judgment).  In other words,

what is the source and scope of the obligation to provide "honest services," which could

conceivably derive from myriad sources of law and ethical principles?  *See id.* at 416-19.

Furthermore, tying honest-services fraud to bribery helps very little when the government insists

that bribery can have several contradictory definitions.  *Skilling* held that the honest-services

statute's "prohibition on bribes and kickbacks draws content . . . from federal statutes

proscribing—and defining—similar crimes," including *both* § 201 and § 666.  561 U.S. at 412.

But as explained above, the government has taken the position that § 201 and § 666 are

significantly different, and that *McDonnell* applies to the former but not the latter.  If this is what

the government believes, how can the average citizen predict how the government will apply the

honest-services statute?[9]

The honest-services statute is not a valid criminal prohibition.  Count 2 should be

dismissed.

## VI.    THE HOBBS ACT DOES NOT COVER THE CHARGED CONDUCT

The Hobbs Act prohibits "extortion" "under color of official right."  18 U.S.C. § 1951.

While the Supreme Court has interpreted this as a prohibition against bribery, *see Evans*, 504

U.S. at 268; *Ganim*, 510 F.3d at 142-47, this is incorrect.  Extortion "under color of official

right" requires the public official to obtain property under the false pretense that he has an

official right to that property.  *See Evans*, 504 U.S. at 283 (Thomas, J., dissenting); *see also*

---

[9] Fortunately, the Second Circuit has held that *McDonnell* applies to the honest-services statute.
*Silver*, 864 F.3d at 118 & n.84.

*Ocasio v. United States*, 136 S. Ct. 1423, 1437 (2016) (Breyer, J., concurring); *id.* at 1437-38 (Thomas, J., dissenting); *id*. at 1445 n.3 (Sotomayor, J. dissenting).  Here, there is no allegation that Dean Skelos obtained any payments for Adam in this manner.  Accordingly, while this Court is bound to hold otherwise, the Hobbs Act counts are invalid, and the Skeloses preserve this objection to those counts in the event of an appeal.

**CONCLUSION**

For the foregoing reasons, the Indictment should be dismissed.[10]


Dated:          March 1, 2018
                New York, New York

                                        Respectfully submitted,


                                        /s/ Alexandra A.E. Shapiro
                                        Alexandra A.E. Shapiro
                                        Eric S. Olney
                                        Fabien Thayamballi
                                        Shapiro Arato LLP
                                        500 Fifth Avenue, 40th Floor
                                        New York, New York 10110
                                        (212) 257-4880

                                        G. Robert Gage, Jr.
                                        Gage Spencer & Fleming LLP
                                        410 Park Avenue, Suite 900
                                        New York, New York 10022
                                        (212) 768-4900

                                        *Attorneys for Dean Skelos*

                                        John J. Kenney
                                        Hoguet Newman Regal & Kenney, LLP
                                        10 East 40th Street
                                        New York, New York 10016
                                        (212) 689-8808

                                        *Attorneys for Adam Skelos*

---

[10] On January 19, 2018, the Defendants served a request for a Bill of Particulars. (Thayamballi Decl. Ex. 1). On February 7, 2018, the government responded. (Thayamballi Decl. Ex. 2). The Defendants have had discussions with the government since receiving its letter, and the result of those discussions may inform and narrow the issues on which it might be necessary to seek the Court's intervention with regard to the Bill of Particulars. Accordingly, although a motion for Bill of Particulars would be premature at this time, the Defendants reserve their rights to make such an application to the Court at a later time should that become necessary.