

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

July 10, 2015

Christopher P. Conniff
T +1 212 596 9036
F +1 646 728 2922
christopher.conniff@ropesgray.com

**BY ELECTRONIC MAIL**

Rahul Mukhi/Jason Masimore/Tatiana Martins
Assistant United States Attorneys
United States Attorney's Office
For the Southern District of New York
1 St. Andrews Plaza
New York, NY  10007

Re:    *United States v. Dean Skelos and Adam Skelos*, 15 Cr. 317 (KMW)

Counsel:

      We submit this joint discovery request on behalf of Dean Skelos and Adam Skelos in connection with the above-referenced matter. Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, the Fifth and Sixth Amendments, and the Department of Justice's "Guidance for Prosecutors Regarding Criminal Discovery," we request that, to the extent they are in its possession, custody, or control, the government provide the following documents, information, and other materials to Dean Skelos and Adam Skelos:

1.  All documents relating to any alleged steps taken by Dean Skelos to "facilitate" the award of the Nassau County contract to AbTech Industries. In this regard, please also identify the alleged steps, if any, taken by Dean Skelos to "monitor[] the progress of Nassau County's Request for Proposal ("RFP")," "help[] to secure early confirmation that the Nassau Interim Finance Authority ("NIFA") intended to approve the contract with Abtech" and "assist[] Abtech in obtaining additional funds and payments once the Nassau County RFP and contract were awarded to Abtech." (*See* June 22, 2015 Letter). In this regard, we request the statements, including handwritten notes of any meetings and/or attorney proffers, with the following witnesses identified in the government's June 22, 2015 letter: Edward Mangano; Richard "Rob" Walker; Ken Arnold; Tim Kelly; Jon Kaiman; and Glenn Rink. Additionally, we request any other witness statements, including handwritten notes of any meetings or attorney proffers, inconsistent with the allegations referenced herein. To the extent not evident from the notes, please also advise the dates each statement was made.

2. Identify all steps taken by Dean Skelos in his alleged "attempt[] to secure changes to New York State's 2015-2016 budget to include additional funding for stormwater infrastructure projects and changes to New York State Law that would have authorized so-called "design-build" contracts." (Indictment, ¶ 15(g)). In this regard, we request the statements, including handwritten notes of any meetings or attorney proffers, with the following witnesses identified in the government's June 22, 2015 letter: Robert Mujica, Thomas Locascio, James Malatras, and New York State Senators Carl Marcellino, Jack Martins, Thomas Croci and Michael Venditto. Additionally, we request any other witness statements, including handwritten notes of any meetings or attorney proffers, inconsistent with the allegations described in this request. To the extent not evident from the notes, please also advise the dates each statement was made.

3. Identify all title insurance commissions provided to Adam Skelos from "major real estate developers with legislative business before Dean Skelos." (Indictment, ¶ 7(a)). Also identify the legislative business Dean Skelos allegedly impacted as a result of these title insurance commission payments. In this regard, we request the statements, including handwritten notes of any meetings or attorney proffers, with the following witness identified in the government's June 22, 2015 letter: Robert Speyer (the President of "Developer-2" identified in the Complaint). Additionally, we request any other witness statements, including handwritten notes of any meetings or attorney proffers, inconsistent with the allegations described in this request. To the extent not evident from the notes, please provide the date of the statement.

4. All documents supporting the contention in the government's June 22, 2015 letter that Dean Skelos understood that Adam Skelos exaggerated and/or misrepresented support Dean Skelos was providing or would provide for AbTech's agenda in order to secure continued payments by AbTech. Additionally, we request any witness statements, including handwritten notes of any meetings or attorney proffers, inconsistent with the allegations described in this request. To the extent not evident from the notes, please provide the date of the statement.

5. All documents relating to statements including, but not limited to, notes of meetings or attorney proffers, made by Michael Avella or Nicholas Barrella relating to Dean Skelos' admonition that "Adam Skelos should not be lobbying at the [New York] State level," as referenced in the government's June 22, 2015 letter.

6. Identify any work or services that that the government intends to argue at trial was referred to Adam Skelos in the hope that Dean Skelos would assist them with official acts other than those acts identified in the Complaint and/or Indictment.

7. Identify any acts ("official" or otherwise) by Dean Skelos that the government intends to argue at trial were done in return for any work or services provided to Adam Skelos other than those acts identified in the Complaint and/or Indictment.

8. All documents identifying any steps taken by Dean Skelos to "pressure[] Nassau County officials (i) to obtain additional funding so that work on the Nassau County Contract could progress; and to make payments to [AbTech] so that the Company would continue making monthly payments to Adam Skelos." (Indictment, ¶ 15(e)). In this regard, we request any witness statements, including handwritten notes of any meetings or attorney proffers, inconsistent with the allegations described in this request. To the extent not evident from the notes, please also advise the dates each statement was made.

9. Identify all steps taken by Dean Skelos in his alleged "support[] of legislative proposals favorable to Developer-1, including but not limited to proposals made by lobbyists for Developer-1 with respect to the Rent Act of 2011." (Indictment, ¶ 15(b)). As to each, please specify any acts undertaken by Dean Skelos to assist with such legislation. In this regard, we request the statements, including handwritten notes of any meetings or attorney proffers, of any individuals providing statements that are inconsistent with the allegation described in this request. To the extent not evident from the notes, please also advise the dates each statement was made.

10. Identify all steps taken by Dean Skelos in his alleged "promot[ion] and vot[ing] for various real estate legislation sought by and favorable to Developer-1, including legislation concerning rent regulation and property tax abatements, and . . . rebuff[ing] [of] legislative initiatives put forth by interests adverse to Developer-1." (Indictment, ¶ 15(c)). As to each, please specify any acts undertaken by Dean Skelos to assist with such legislation. In this regard, we request the statements, including handwritten notes of any meetings or attorney proffers, of any individuals providing statements that are inconsistent with this allegation described in this request. To the extent not evident from the notes, please also advise the dates each statement was made.

11. With regard to Count 1 and Count 2, identify all known co-conspirators.

12. All other documents and objects that the government presently intends to use in any way as part of its case-in-chief, to the extent they have not been produced. *See* Fed. R. Crim. P. 16(a)(1)(E)(ii).

13. All documents and objects material to the preparation of Dean Skelos' or Adam Skelos' defense. See Fed. R. Crim. P. 16(a)(1)(E)(i).

    (a) Identify all campaign donors Dean Skelos allegedly sought to reward and punish through official action. (Indictment, ¶ 7).

(b) All documents sufficient to identify any financial interest of Charles Dorego or "the founder of Developer-1" in AbTech and all agreements between AbTech and Charles Dorego.

14. All documents and objects that the government obtained directly from Dean Skelos or Adam Skelos, to the extent they have not been produced. *See* Fed. R. Crim. P. 16(a)(1)(E)(iii).

15. All statements made by Dean Skelos or Adam Skelos to any person known to be an agent of the government, to the extent they have not been produced. See Fed. R. Crim. P. 16(a)(1)(A).

16. All written or recorded statements made by Dean Skelos or Adam Skelos, including but not limited to any materials that purport to reflect, summarize, or otherwise memorialize statements made by Dean Skelos or Adam Skelos, to the extent they have not been produced. See Fed. R. Crim. P. 16(a)(1)(B)(i). In this regard, please provide a list of all Title III recordings that the government intends to introduce at trial against Dean Skelos or Adam Skelos, transcripts of all such recordings, and a list of all Title III recordings that tend to exculpate Dean Skelos or Adam Skelos.

17. With respect to any witness that the government presently expects to call as part of its case-in-chief, including, but not limited to, Charles Dorego and Bjornulf White, all statements to which Dean Skelos or Adam Skelos would be entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure.

(a) With respect to any witness that the government presently expects to call as part of its case-in-chief, all memoranda of interviews created by the government with respect to that witness (e.g., FBI 302s).

(b) All evidence that tends to impeach the testimony of any potential government witness, including but not limited to records and information revealing prior criminal convictions or guilty verdicts. See "Guidance for Prosecutors Regarding Criminal Discovery," at 3; *Giglio v. United States*, 405 U.S. 150 (1972).

(c) With respect to any witness that the government presently intends to call at trial, all records, information, or allegations of prior misconduct, criminal acts, or bad acts of which the government knows or through reasonable diligence should have reason to know. See "Guidance for Prosecutors Regarding Criminal Discovery," at 3.

(d) Any written or oral statement, whether or not reduced to writing, made by any potential government witness that contradicts, is inconsistent with, or different from other oral or written statements he or she has made, other than those requested above. See "Guidance for Prosecutors Regarding Criminal Discovery," at 3. In

particular, any prior inconsistent statements by Bjornulf White or Charles Dorego, or either of their counsel in any attorney proffers.

(e) Non-prosecution agreements, plea agreements, letter agreements, correspondence, or other writings pertaining to proffer sessions, criminal charges, criminal disposition, or criminal or civil resolution of any matters against any potential government witness including, but not limited to, the individuals identified as CW-1 and CW-2 in the Indictment.

18. All documents relating to expenses incurred by Bjornulf White during any consensual meeting with Adam Skelos, including the February 13, 2015 meeting at the W Hotel.

19. All documents sufficient to identify lobbying performed by Glenwood Management or on behalf of Glenwood Management (including, but not limited to, lobbying by Charles Dorego) to any New York State official during the period 2010 through 2015, to the extent they have not been produced already. This request includes lobbying of members of the Executive and Legislative branches of the New York State government as well as any municipality within New York State.

20. To the extent not specifically requested above, all exculpatory or impeaching material in the government's possession, custody, or control. See *Brady v. Maryland*, 373 U.S. 83 (1963).

21. Results of any examinations or tests that the government presently intends to use at trial as part of its case-in-chief, including any examinations or tests that the government intends to use to authenticate material the government intends to introduce at trial, to the extent they have not been produced. *See* Fed. R. Crim. P. 16(a)(1)(F)(iii).

22. A written summary of any opinion testimony that the government presently expects to introduce at trial pursuant to Federal Rules of Evidence 702 or 703, including a description of such testimony, the bases and reasons for such testimony, and the witness's qualifications to provide such testimony. *See* Fed. R. Crim. P. 16(a)(1)(G).

23. A description or summary of any evidence or testimony that the government presently expects to introduce under Federal Rule of Evidence 1006, and the documents, materials, or information underlying such evidence or testimony.

24. All documents reflecting communications between any government official and media representative/reporter relating to the USAO's investigation of Dean Skelos including but not limited to, electronic communications, telephone messages and calendar appointments. This request covers only the period from January 1, 2015 through May 28, 2015.

25. To the extent the government is aware, a detailed description of any evidence relating to the allegations in the Indictment that has been destroyed or lost or that is not in the government's possession, custody, or control.

In addition to the foregoing requests, we also request that, as a predicate to any future motion practice under Rule 12 of the Federal Rules of Criminal Procedure, the prosecution provide Dean Skelos and Adam Skelos notice and/or copies of the following:

26. Whether, should Dean Skelos or Adam Skelos testify on his own behalf, the government will attempt to rely upon specific instances of conduct for the purpose of impeachment and, if so, a description of such instances of conduct.

27. Whether the government presently intends to introduce at trial prior crimes, wrongs, or acts allegedly committed by Dean Skelos or Adam Skelos in order to prove motive, scheme, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident and, if so, a detailed description of such crimes, wrongs, or acts. *See* Fed. R. Evid. 404(b).

28. Memoranda and any written notes of interviews created by the government (*e.g.*, FBI 302s) with respect to any individual that offered information relating to the allegations in the Indictment, regardless of whether the government presently intends to call such individual as a witness at trial.

When producing material that is responsive to the above requests, please identify the request to which the material is responsive. If the government declines to provide any information requested in this letter, please advise us of the government's objection so that we can consider bringing any dispute to the attention of the Court. In addition, please consider each of the above requests as continuing in nature.

We are available to speak by telephone or e-mail if you would like to discuss these requests further.

Very truly yours,

Christopher P. Conniff

G. Robert Gage /ckm

G. Robert Gage, Jr.
Gage Spencer & Fleming LLP

GAGE SPENCER & FLEMING LLP
ATTORNEYS AT LAW
410 PARK AVENUE
NEW YORK, NEW YORK 10022

TELEPHONE: (212) 768-4900
FACSIMILE: (212) 768-3629
E-MAIL: info@gagespencer.com

August 7, 2015

**Via Email**

Rahul Mukhi/Jason Masimore/Tatiana Martins/Thomas McKay
Assistant United States Attorneys
United States Attorney's Office
for the Southern District of New York
One St. Andrews Plaza
New York, NY 10007

Re: *United States v. Dean Skelos and Adam Skelos*, No. S 15 Cr. 319 (KMW)

Counsel:

As discussed, we submit this request for a Bill of Particulars on behalf of Dean Skelos and Adam Skelos in connection with the above-referenced Superseding Indictment. *See* FED R. CRIM P. 7(f), 16; *Brady v. Marlyand,* 373 U.S. 83 (1963); U.S. Const. amend. V, VI.

## I. "Promote," "Support," "Attempt[] to Secure" and "Assist" Legislation

1. Identify each "legislative proposal" favorable to Developer-1 referenced in ¶ 27(b) of the Superseding Indictment and specify how Dean Skelos "supported" such legislation.[1]

2. Identify all "real estate legislation" sought by and favorable to Developer-1 referenced in ¶ 27(c) of the Superseding Indictment and specify how Dean Skelos "promoted" such legislation.

3. Identify all "legislative initiatives" adverse to Developer-1 referenced in ¶ 27(c) of the Superseding Indictment and specify how Dean Skelos "rebuffed" such initiatives.

4. Specify how Dean Skelos "assisted" the Environmental Technology Company in "attempt[ing]" to secure the issuance of hydraulic fracturing regulations.

[1] Other than the "Rent Act of 2011." (Superseding Indictment, at ¶ 27(b)).

(Superseding Indictment, at ¶ 27(f)).[2]

5. Specify how Dean Skelos "attempted to secure" changes to New York State's 2015-2016 budget to include additional funding for stormwater infrastructure projects. (Superseding Indictment, at ¶ 27(g); *see also* June 22, 2015 Discovery Letter, at II).

6. Specify how Dean Skelos "attempted to secure" changes to New York State's 2015-2016 budget that would have authorized "design-build" contracts. (Superseding Indictment, at ¶ 27(g); *see also* June 22, 2015 Discovery Letter, at II).

7. Identify each piece of legislation referenced in ¶ 27(h) of the Superseding Indictment related to the Malpractice Insurance Administrator and how Dean Skelos supported such legislation.

**II. "Facilitate," "Pressure" and "Further Pressure" Regarding Nassau County**

8. Specify how Dean Skelos "facilitated the approval" of the contract referenced in ¶ 27(d) of the Superseding Indictment. (*See also* June 22, 2015 Discovery Letter, at I).

9. Specify how Dean Skelos "pressured Nassau County" with regard to obtaining "additional funding" and "mak[ing] payments" to the Environmental Technology Company. (Superseding Indictment, at ¶ 27(e); *see also* June 22, 2015 Discovery Letter, at II).

10. Specify how Dean Skelos applied "further pressure" on Developer-1 as referenced in ¶ 16 of the Superseding Indictment.

**III. "Detrimental Action," "Fostering the Expectation" and "Threats"**

11. Specify the "statements" made by Dean Skelos to CW-1 "and others" that he would take "detrimental action" against real estate developers who did not support him by, among other things, making contributions to his campaign fund. (Superseding Indictment, at ¶ 12).

12. Specify the acts taken by Dean Skelos to "foster[] the expectation" that Dean Skelos would take official actions favorable to and would refrain from taking official action to the detriment of Developer-1 and the Environmental Technology Company. (Superseding Indictment, at ¶ 9).

---

[2] Other than "directing" members of his Senate staff to arrange a meeting between the Environmental Technology Company and the Department of Health. (Superseding Indictment, at ¶ 27(f)).

13. Specify the "threat" allegedly made by Dean Skelos to "block" a potential contract between the Environmental Technology Company and Nassau County, including who the Government contends he threatened. (*See* Superseding Indictment, at ¶ 14).

**IV. Co-Conspirators and Specific Mails and Wires**

14. Identify the co-conspirators in Dean Skelos' and Adam Skelos' alleged scheme and/or conspiracy.

15. Specify the wires and mails which the Government alleges were "transmitted" in "interstate and foreign commerce" which violate 18 U.S.C. § 1343. (*See* Superseding Indictment, at ¶¶ 28, 35).

**V. False Statements and Destroyed Evidence**

16. Specify the basis for the allegation that Dean Skelos understood that Adam Skelos "at times exaggerated and/or misrepresented support Dean Skelos was providing or would provide for Abtech's agenda in order to secure continued payments by Abtech." (June 22, 2015 Discovery Letter, at 3 n. 3).

17. Identify all instances in which a person the Government intends to call at trial has deleted emails or destroyed evidence.

**VI. Exculpatory Information in the Government's Possession**

Additionally, we reiterate our request for the immediate production of *Brady* material particularly with respect to any witnesses the Government intends to call at trial. *Brady* would include any statements or instances in which a witness has changed or materially altered his or her version of events. *See United States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 163 (2d Cir. 2008) (FBI agent's handwritten notes from an attorney proffer are properly considered *Brady* because "[Defendant] could have argued that [witnesss] initially authorized his attorney to tell the truth, which inculpated others and exculpated [Defendant], but that once he began to cooperate with the government he fabricated a new, inculpatory version of his dealings with [Defendant] to enhance the value of his cooperation and his expected reward.").

We also reiterate our request that *Brady* and *Giglio* material be promptly produced so that we have the opportunity to make effective use of it at trial.[3]

[3] This letter supplements our prior discovery request dated July 10, 2015.

GAGE SPENCER & FLEMING LLP

      We are available to speak if you would like to discuss these requests further.

                                 Sincerely,

                                 G. Robert Gage, Jr.

CC:   Christopher P. Conniff

4