

10 East 40th Street
New York, New York 10016

Tel 212.689.8808
Fax 212.689.5101
www.hnrklaw.com

jkenney@hnrklaw.com

June 18, 2018

**VIA ECF**

Hon. Kimba M. Wood
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re: United States v. Dean Skelos and Adam Skelos, 15 Cr. 317 (KMW)**

Dear Judge Wood:

Defendants Adam and Dean Skelos seek the Court's assistance in compelling the government to meet its constitutional obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), to turn over exculpatory material to the defense.

On June 4, the government belatedly[1] disclosed to the defendants the existence of a presentation made to the United States Attorney's Office by Glenwood Management Corporation ("Glenwood") following the first trial (the "Glenwood Presentation") and provided the defendants with a partial summary of that presentation. Based on the limited disclosure made by the government, the Glenwood Presentation directly rebuts the Glenwood charges and provides grounds to impeach the testimony of Charles Dorego, one of the key cooperating witnesses in this case. Disclosure of the Glenwood Presentation may also lead to the discovery of additional exculpatory evidence. Nonetheless, the government has refused to produce the underlying documents.

Based on the "in substance and in part" description provided to the defense, the Glenwood Presentation consists of a detailed refutation of the existence of a *quid pro quo* between Glenwood and Dean Skelos for passage of the Rent Act of 2011. As described by the government in its summary, the Glenwood presentation stated that:

> [t]he value of 421a benefits is not an appropriate measure of forfeiture, because the payments to Adam Skelos were not arranged or made until

[1] The government has not told us the date of the Glenwood Presentation except that it occurred "subsequent to the first trial." (Ex. A). The government's letter to us is dated June 4, 2018, but, in an apparent oversight, pages 2, 3, and 4 of the letter bear the date May 23, 2018. (*Id.*).




> more than a year after 421a was renewed, and the hostile legislative actions that Senator Skelos could take were uncertain. Thus, while Glenwood could imagine any number of unspecified hostile actions that could have been taken adverse to its interests, it mischaracterizes the record to say that any particular official action resulted from the payments. Rather, Senator Skelos's conduct suggested a large menu of both known and unknown adverse potential actions, with uncertain associated losses. There was no evidence that, if Glenwood had not made the payments, the 421a program would not have been renewed or different legislation would have been passed, and there was never any doubt that Skelos intended to and would support the renewal of 421a before he introduced the idea of payments to his son.

(Ex. A).

The government's summary also indicates that the Glenwood Presentation contradicted Dorego's testimony that dire economic consequences would have resulted had 421a not been renewed in 2011 (Tr. 484 ("Q. Could you live without a renewal of 421a? A. No."); 448-49):

> Glenwood operates twenty-seven buildings … Twenty out of the twenty-seven buildings were not 80/20 buildings, and 5 were developed without tax abatements. Seven buildings constructed between 1994 and 2013, relied on 20-year 8/20 abatements [sic]. The 421a benefits for Glenwood properties that qualified before the renewal of 421a in the Rent Act of 2011 could not be revoked or altered by virtue of the renewal or non-renewal of the program. Glenwood has two buildings that qualified for 421a benefits between the time of the renewal and the end of 2015: 160 West 62nd Street, and 175 West 60th Street. The former qualified for 421a on June 6, 2012, and the latter qualified for 421a on July 10, 2014. Between 2011 and 2015, the two buildings, in aggregate, received more than $12 million in benefits. If the 421a program had not been available, Glenwood would have found an alternative profitable use for the land for these properties.

(Ex. A).

On June 15, 2018, the defendants wrote to the government and requested production of "any written submission made to the Office by Glenwood and/or its attorneys in connection with [the] presentation and any notes or memoranda made by government personnel concerning Glenwood's presentation." (Ex. B). The government responded the following day in an email in which it takes the position that the Glenwood Presentation is not admissible and thus not subject to disclosure under *Brady*/*Giglio*, and their progeny. The government also apparently believes that the Glenwood Presentation is shielded by Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. The government's response betrays a fundamental and deeply troubling misunderstanding of its constitutional disclosure obligations under *Brady, Giglio*, and their progeny.




As an initial matter, the material is plainly subject to mandatory and timely disclosure under *Brady/Giglio*. "*Brady* and its progeny require the Government to disclose material information that is 'favorable to the accused, either because it is exculpatory, or because it is impeaching.'" *United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Moreover, "the Government's obligations under *Brady* to disclose such information *does not depend on whether the information to be disclosed is admissible as evidence in its present form*." *Id.* n.4 (emphasis added). "The objectives of fairness to the defendant, as well as the legal system's objective of convicting the guilty rather than the innocent, require that the prosecution make the defense aware of material information potentially leading to admissible evidence favorable to the defense." *Id.* (citing *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002), and *DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006)); *United States v. Mahaffy*, 693 F.3d 113, 131 (2d Cir. 2012). Indeed, exculpatory material is subject to disclosure under *Brady/Giglio* even if it may be used as no more than "an effective tool in disciplining witnesses during cross-examination by refreshment of recollection or otherwise." *Gil*, 297 F.3d at 104.

Although the defendants have no obligation to show admissibility, the government's limited disclosure so far indicates several grounds for the documents' admission or use at trial. Glenwood is one of the three alleged victims/bribe-payers. Dorego, a key prosecution witness, was not only Glenwood's general counsel, but, during the period in question, was effectively running the company. It is implausible that Glenwood's attorneys would have made this crucial submission to the government without Dorego's knowledge and approval of its contents. The Glenwood Presentation is certainly admissible both to contradict the government's theory of why Glenwood helped Adam Skelos, and to impeach Dorego's testimony. At a bare minimum, the underlying documents may assist the defendants during cross-examination of Dorego as a means of "disciplining" his testimony and refreshing his recollection as to key details. *Id.* These documents must be produced to the defense. A summary "in substance and in part" is not enough.

The government's other purported ground for withholding the Glenwood Presentation is also completely without merit. The government informs us that the Glenwood Presentation was provided "pursuant to Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 in the course of settlement/plea negotiations." (Ex. C). However, Federal Rule of Evidence 410 (which supplies the content of Federal Rule of Procedure 11(f)) merely prohibits the government (or another party) from using statements made during plea discussions "against the defendant who made the plea or participated in the plea discussions." Fed. R. Evid. 410(a). In other words, the rule protects the accused, and, by its plain terms, does not prevent the use of plea discussions when "the proof is offered against the prosecuting authority[.]" 12 Fed. Prac., L. Ed., § 33:251 (June 2018 Update). And the rule clearly does not abrogate the government's *constitutional* obligations under *Brady* and *Giglio*.




Trial begins tomorrow and the defendants' need for this crucial exculpatory material could not be more urgent.

Respectfully submitted,

John J. Kenney

cc: All counsel (via ECF)